J.T. TALBERT *v.* STATE of Arkansas

CR 05-1279                                    239 S.W.3d 504

Supreme Court of Arkansas
Opinion delivered September 21, 2006

---

*Max M. Horner, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant, J. T. Talbert, Jr., appeals his judgment of conviction for two counts of sexual assault in the third degree and two sentences of twenty years, to run consecutively. He raises multiple points on appeal. We hold that the points have no merit, and we affirm.

Talbert operates Advantage Plus Employment Agency and is also the minister of New Birth Ministries. During the time the State contends that the events in this case took place, both the employment agency and the church were located in the same building in North Little Rock. At trial, one of the victims, Betty Teague, testified that in 2003, she responded to a newspaper ad for Talbert's employment agency. This is where she first met Talbert, and he invited her and others to return to his church for a sermon. Ms. Teague attended the church for the sermon, after which Talbert prayed with her. Following that day, they spoke on the telephone frequently, and Talbert continued to invite Ms. Teague to church. Ms. Teague testified that she confided in Talbert about problems in her life. She also testified that she looked up to Talbert as a preacher and thought of him as someone she could turn to for help. It was during this period, she said, that he sexually assaulted her.

The second victim, Dominique Murphy, testified that she attended New Birth Ministries and worked at the church as a secretary. She testified that one day during the summer of 2002, Talbert called her into his office at the church during lunch and sexually assaulted her. A second incident occurred later that summer when Talbert took her to a motel where he again assaulted her. Ms. Murphy testified that she was afraid to resist on both

occasions. She testified that during this time, she saw Talbert as a father figure and looked up to him as a preacher.

Following trial, the jury convicted Talbert of sexual assault in the third degree of both counts involving Ms. Teague and Ms. Murphy under Arkansas Code Annotated § 5-14-126(a)(1)(B) (Repl. 2006), which prohibits a member of the clergy from using his position of trust and authority to engage in sexual activity with a victim. He was sentenced to a total of forty years.

## I. Preservation

We first address the State's claim that Talbert's constitutional arguments are not preserved for appeal due to lack of specific rulings by the circuit court. To preserve an issue for appeal, an appellant must raise the issue and make an argument at trial. *See, e.g., Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). Furthermore, an appellant must obtain a ruling on the issue in order to preserve it for appellate review. *See id.* This court has stated that the circuit court must have the benefit of the development of the law by the parties in order to rule adequately on the issues. *See id.* Because Talbert did not obtain specific rulings from the circuit court on each of his six constitutional challenges below, the State maintains that he should not be able to assert them on appeal. We disagree.

On July 13, 2005, before trial, Talbert moved to dismiss the charges against him based on six asserted constitutional challenges to § 5-14-126(a)(1)(B) and filed a brief in support of the motion in which he argued each challenge. The State responded to all six challenges. On August 5, 2005, the circuit court denied the motion by a docket entry, which read that the motion was "denied as untimely and on the merits." At trial, Talbert renewed his motion to dismiss in light of trial testimony, in addition to his motion for directed verdict, both at the end of the prosecutor's case and at the end of all the evidence. Both renewed motions were denied by the circuit court.

We decline to affirm this matter due to lack of preservation. Specifically, we disagree with the State that this case is governed by our decision in *Raymond v. State, supra*. In *Raymond, supra*, the appellant did not mention the argument made on appeal in his motion to dismiss before the circuit court or in his argument to the circuit court during trial. Instead, he made only general constitutional arguments before the circuit court. We said in that case that

a "general objection by a party who cites to constitutional provisions was not sufficient to preserve constitutional questions presented on appeal." *Raymond*, 354 Ark. at 165, 118 S.W.3d at 572.

Similarly, in *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997), the appellant argued that the incriminating statements she made should have been suppressed because she had not knowingly and intelligently waived her constitutional rights. The circuit court ruled that the waiver was voluntary but did not rule on whether it was knowingly and intelligently made. *See id.* Because voluntariness is a separate issue from a knowing and intelligent waiver, this court stated that her issue was not properly preserved on appeal. *See id.*

Both *Raymond, supra,* and *Wofford, supra,* can be readily distinguished from the current case in that neither of the appellants in those cases argued the specific issue before the circuit court that they later argued on appeal. In the instant case, Talbert did argue all six constitutional challenges before the circuit court, the State responded to all six challenges, and the circuit court denied his motion to dismiss as failing on the merits three separate times. We conclude that the constitutional issues were fully developed before the circuit court and that the circuit court was fully apprised of the issues. It is true that the circuit court denied the challenges in a single ruling all three times, but under these facts, we see no necessity for six separate rulings. Accordingly, we hold that Talbert's constitutional challenges are reviewable by this court.

## II. Sufficiency of the Evidence

Talbert first argues that there was insufficient evidence to sustain his conviction for third-degree sexual assault. We consider sufficiency questions first due to double-jeopardy implications. *See, e.g., Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). At trial, Talbert moved for a directed verdict, both after the State's case and at the close of all evidence as required. He argues that the State's evidence proves nothing more than a consensual sexual relationship with both Ms. Teague and Ms. Murphy. He contends that there was no evidence that he, as the minister of New Birth Ministries, was in a position of trust or authority over either victim or that he used that position to engage in a sexual relationship with either.

In reviewing a challenge to the sufficiency of the evidence by a defendant, an appellate court is to view the evidence in the light most favorable to the State. *Stone v. State*, 348 Ark. 661, 74

S.W.3d 591 (2002). Only the evidence that supports the conviction should be considered. *See id.* A conviction will be affirmed if there is substantial evidence to support it. *See id.* Substantial evidence is evidence of sufficient force and character that with reasonable certainty compels a conclusion one way or the other without resorting to speculation or conjecture. *See id.* This court has held that a victim's uncorroborated testimony is sufficient to support a conviction. *Arnett v. State,* 353 Ark. 165, 122 S.W.3d 484 (2003).

The third-degree sexual assault statute reads:

(a) A person commits sexual assault in the third degree if the person:

(1) Engages in sexual intercourse or deviate sexual activity with another person who is not the actor's spouse, and the actor is:

. . . .

(B) A professional under § 12-12-507(b) or a member of the clergy and is in a position of trust or authority over the victim and uses the position of trust or authority to engage in sexual intercourse or deviate sexual activity.[1]

The State presented the testimony of Ms. Teague and Ms. Murphy to prove that Talbert did in fact use his position of trust and authority over these victims to engage in sexual activity with them. Ms. Teague testified that she met Talbert after applying for a job through his employment agency. She attended his church once after receiving an invitation from him, and later talked to Talbert frequently on the telephone. He continued to invite her to church, and she confided in him about her alcohol problems and sexual preference. The incident in question occurred after Ms. Teague contacted Talbert regarding problems she was having with her automobile. He came to her home, she thought to help her, but instead he requested oral sex and sexual intercourse. She testified that she looked up to Talbert as a preacher and as someone she could turn to for help. Though Talbert at first denied that a

---

[1] Twenty-eight other professions are listed under this statute, including child-care workers, dentists, judges, law-enforcement officials, medical personnel, teachers, and prosecuting attorneys.

sexual relationship ever occurred between Ms. Teague and him, DNA evidence proved otherwise, as semen found on Ms. Teague's bedding matched Talbert's DNA.

When viewed in the light most favorable to the State, Ms. Teague's testimony, corroborated by DNA evidence, is substantial evidence to prove that Talbert did in fact have sexual relations with Ms. Teague and that he abused his position of trust and authority over her to do so.

Ms. Murphy's testimony also amounts to sufficient evidence to convict Talbert. She testified that she was a member of New Birth Ministries and that she worked at the church as a secretary. He sexually assaulted her on two separate occasions. The first assault took place in Talbert's office one day during lunch. He called her into his office and asked her to perform oral sex on him. She testified that she agreed because she was afraid he would rape her if she resisted. The second incident took place at a motel. Talbert offered to drive Ms. Murphy to an appointment at a local State Department of Human Services office but instead drove her to a motel and had oral sex and sexual intercourse with her. She testified that she was afraid of what he might do if she refused. Ms. Murphy testified that Talbert was a father figure to her and she viewed him as her preacher. Ms. Murphy's testimony is substantial evidence that Talbert was able to take advantage of her because of his position of trust and authority over her.

Talbert argues that this testimony shows nothing more than a consensual sexual relationship. He argues that the only thing the evidence proves is that Talbert asked for sex and Ms. Teague and Ms. Murphy agreed. He asserts that neither victim testified that they put up a fight and that neither stated they were threatened by Talbert in any way. But our review of whether a crime was committed does not end with the fact that Talbert had sex with the two victims. Both victims testified that they looked up to Talbert as a preacher and trusted him. Ms. Murphy testified that she was afraid of what might happen to her if she did not comply with his sexual requests. She further testified that she was not attracted to him. Ms. Teague stated that she told Talbert regarding sex, "No, you're a preacher. It's not proper. It's not right." This testimony does not indicate a consensual relationship. It indicates that Talbert, as a minister, used his position of trust and authority

over these two victims to engage in unwanted sexual activity with them. The evidence was sufficient to sustain Talbert's conviction for third-degree sexual assault.

### III. Constitutional Issues

Talbert next argues that § 5-14-126(a)(1)(B) violates various rights vested in him under the United States and Arkansas Constitutions. In reviewing the constitutional challenges, this court has held that a statute is presumed constitutional and all doubts are resolved in favor of constitutionality. The party challenging the statute has the burden to prove otherwise. *See, e.g., Otis v. State,* 355 Ark. 590, 142 S.W.3d 615 (2004).

#### a. Substantive Due Process

Talbert argues that after *Lawrence v. Texas,* 539 U. S. 558 (2003), a state cannot intrude into an individual's right to engage in private, consensual sex with other adults. While *Lawrence, supra,* does stand for this proposition, the acts criminalized by the Texas statute in *Lawrence* are distinguishable from the acts criminalized by § 5-14-126. In *Lawrence, supra,* the Texas statute had criminalized consensual sexual acts. In the instant case, Talbert was not being prosecuted for consensual sexual acts with Ms. Teague and Ms. Murphy. Rather, he was being prosecuted for using his position of trust and authority over those individuals to engage in those acts. Substantive due process, including his right to engage in private, consensual sex, protects an individual's liberty interest under the United States Constitution (*Lawrence, supra*), but Talbert has no liberty interest to engage in sexual activity by abusing his position of trust and authority. His substantive due process rights simply were not violated in this instance.

#### b. Equal Protection

Talbert next argues that § 5-14-126(a)(1)(B) violates his rights under the Equal Protection Clause of the United States Constitution. He contends that the statute constitutes class-based legislation that singles out ministers and prohibits them from engaging in consensual sex with other adults. Once again, Talbert misconstrues the statute as one that prohibits purely consensual conduct. As previously discussed, he was not prosecuted for purely consensual acts but rather for using his position of trust and

authority to engage in sexual activity. Moreover, other professions are referenced in § 5-14-126, as already footnoted in this opinion.

█ In order to prove that the classification in § 5-14-126 violates the Equal Protection Clause, the appellant must demonstrate that there is no rational basis for the classification. *Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005). Under the rational basis test, the party challenging the constitutionality of the statute must prove that the statute is not rationally related to "achieving any legitimate governmental objective under any reasonably conceivable fact situation." *See id.* Members of the clergy are highly respected and trusted by most people. People specifically seek out their ministers and clergyman when they are especially vulnerable and in time of need. Because the clergy is held in such a high regard, there is a legitimate reason for the State to criminalize a clergyman's abuse of this trust and authority to procure sex.

### c. Privacy Rights Under Arkansas Constitution

Talbert next claims that § 5-14-126(a)(1)(B) violates his privacy rights under the Arkansas Constitution. He cites *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002), for the proposition that a fundamental right to privacy is implicit in the Arkansas Constitution. Because the right to privacy is a fundamental right, he contends that the constitutionality of a statute that infringes upon that right must be examined under strict scrutiny and is unconstitutional unless "a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out [the] state interest." *See id.* at 632, 80 S.W.3d at 350 (quoting *Thompson v. Arkansas Social Services*, 282 Ark. 369, 374, 669 S.W.2d 878, 880 (1984)).

█ Talbert is correct that we held in *Jegley, supra,* that there is a fundamental right to privacy implied in the Arkansas Declaration of Rights of the Arkansas Constitution. We disagree, however, that his right to privacy has been violated. To repeat, the statute in question does not infringe upon Talbert's fundamental right to have private, consensual sex. The conduct criminalized by the statute is the use of trust and authority as a minister over individuals to engage in unwanted sexual activity with them. Thus, *Jegley, supra,* is distinguishable from the case at hand in that the conduct criminalized in *Jegley* was purely consensual, whereas the conduct criminalized here is not.

## d. Equal Rights Amendment

Talbert also contends that § 5-14-126(a)(1)(B) violates the Arkansas Equal Rights Amendment to the Arkansas Constitution. The analysis under our Equal Rights Amendment is the same as that under the Equal Protection Clause of the United States Constitution. The party challenging a statute must prove that the statute lacks a rational relationship to a legitimate legislative purpose. *See, Jegley, supra.* As discussed above, because members of the clergy are held in high esteem, the statute in question is rationally related to preventing clergymen from using their position of trust and authority to engage in unwanted sexual activity with their victims.

## e. Vagueness

Next, Talbert maintains that the statute did not give him fair notice of what conduct is prohibited and, therefore, is unconstitutionally vague. A law is unconstitutionally vague if it does not give a person of ordinary intelligence fair notice of what conduct is prohibited. *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002). There must be ascertainable standards of guilt in a statute so that a person of average intelligence does not have to guess at its meaning. *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). To challenge a statute on grounds of vagueness successfully, the party must be one of the " 'entrapped innocent,' who has not received fair warning." *Reinert*, 348 Ark. at 5, 71 S.W.3d at 54 (citing *Ross v. State*, 347 Ark. 334, 336, 64 S.W.3d 272, 273 (2002)). If a person's conduct clearly falls within what is prohibited, that person cannot complain that the statute is vague. *See id.* Talbert urges that the statute in question is vague because it does not define "a position of trust or authority" or when one "uses his position to engage in . . . sexual activity." He states that the statute could make it a crime for him to have a sexual relationship with anyone.

Again, we disagree. After reading the language of the statute, a person of ordinary intelligence would not believe that it is a crime, *per se*, for a member of the clergy to have a consensual sexual relationship with someone. The statute makes it clear that a clergyman must have used his position of trust and authority to engage in the sexual relationship. Although, conceivably, it may be unclear in some situations whether an individual is in a position of trust and authority over others, in this case it was clear. Ms. Murphy worked as a secretary in Talbert's church and regularly attended his church services. Ms. Teague once attended Talbert's

church, and he later ministered to her regarding problems in her life. Both victims testified that they thought of Talbert as a preacher and someone they could turn to for help.

We conclude that Talbert's conduct clearly fell within the proscription set forth in § 5-14-126(a)(1)(B), and, therefore, he cannot complain that the statute is unconstitutionally vague. We further conclude that a person of ordinary intelligence would have known that he was in a position of trust and authority over both Ms. Murphy and Ms. Teague, and that he abused that position in order to take advantage of them. In his brief, Talbert gives several speculative situations where the statute might be applied to restrict sexual relationships that it should not constitutionally be able to restrict. This court, however, has stated that if a statute clearly applies to the conduct of the party challenging the statute, the fact that the statute may be questionable in its application to speculative situations is immaterial. *See Reinert, supra.* Furthermore, a statute "will not be struck down as vague only because there could be marginal cases where doubts might arise." *Booker,* 335 Ark. at 326, 984 S.W.2d at 21-22. Though there may be some circumstances under which the statute could be unconstitutionally applied, that is not the case here. The statute does not fail for vagueness.

### f. Freedom of Association

As a final point, Talbert asserts that the statute violates his right to freedom of association under the First Amendment to the United States Constitution. In his brief on appeal, however, he merely quotes the Supremacy Clause in the United States Constitution and then states that the right to freedom of association is contained within the First Amendment. He cites no authority and makes no argument as to how his freedom of association has been impaired. This court has repeatedly held that it will not consider an argument, even a constitutional one, if the appellant makes no convincing argument or cites no authority to support it, and it is not apparent without further research that the appellant's argument is well taken. *See, e.g., Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002). In his brief, Talbert makes only a mere conclusion that his freedom of association rights have been infringed. Accordingly, the issue is not preserved for our review.

### IV. Statute of Limitations

Talbert contends that the charges relating to Ms. Murphy should have been dismissed by the circuit court because the three-year statute of limitations for third-degree sexual assault

expired before the felony information in this case was filed. *See* Ark. Code Ann. § 5-1-109(b)(2) (Repl. 2006). To support his argument, he refers to testimony that Ms. Murphy left the church in 2001. The felony information was not filed until November 2004. Therefore, he argues that anything that did happen between Ms. Murphy and him happened in 2001, and the statute of limitations bars prosecution with respect to these charges.

In a criminal prosecution, the State must prove beyond a reasonable doubt that the statute of limitations has not expired. *See* Ark. Code Ann. § 5-1-111(a)(4). When a statute-of-limitations issue is reviewed on appeal, the appellate court views the evidence in the light most favorable to the state. *See Hunter v. State*, 330 Ark. 198, 952 S.W.2d 145 (1997).

Talbert filed a motion for a directed verdict at trial and argued that the statute of limitations barred his prosecution for the charges against him regarding Ms. Murphy. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Robinson v. State*, 363 Ark. 432, 214 S.W.3d 840 (2005). As already stated, in reviewing these motions, the appellate court must determine whether the verdict is supported by substantial evidence. *See id.*

At trial, Ms. Murphy testified that the assault happened while she was working for the church during the summer of 2002. Three witnesses testified for the defense that Ms. Murphy joined the church in 2001 and left later that same year.[2] The defense introduced into evidence the church roll from 2001, without objection from the State, which stated that Ms. Murphy joined the church in September 2001. Thus, Talbert argues that this evidence proves that any incident that occurred between Ms. Murphy and him occurred in 2001, and that the statute of limitations barred those charges from being brought against him.

As already noted, a victim's testimony alone is substantial evidence to support a conviction. *See Arnett, supra.* Although there was conflicting testimony at trial, there was sufficient evidence that the felony information was filed within the applicable statute of limitations. On appeal, this court cannot weigh the credibility of

---

[2] The three witnesses who testified for the defense were Kimberly Davis, Katherine Merrit, and Phyllis Talbert. Kimberly Davis testified that the church location was moved from its address at Second Street and Hemlock to its new location on Broadway in North Little Rock in March 2002.

witnesses. Our sole inquiry is whether there was substantial evidence to find that the crime occurred in 2002. The only evidence that this court may consider is that which supports the circuit judge's decision. *See Robinson, supra.* In viewing this evidence in the light most favorable to the State, there is sufficient evidence that the crime occurred in 2002, which means the felony information was filed within the applicable limitations period. We affirm on this point.

Affirmed.