2012 Ark. 127

**David Waldon PASCHAL, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–673.**

Supreme Court of Arkansas.

March 29, 2012.

Rehearing Denied May 3, 2012.

---

Casey D. Copeland, Prairie Grove, for appellant.

Dustin McDaniel, Atty. Gen., Little Rock, by: Karen Virginia Wallace, Asst. Atty. Gen., Little Rock, for appellee

JIM HANNAH, Chief Justice.

Appellant David Waldon Paschal was convicted of four counts of second-degree sexual assault and one count of witness bribery. He was sentenced to ten years' imprisonment on each of three of the sexual-assault convictions, given ten years' suspended sentence for the fourth sexual-assault conviction,[1] and fined $4000 for the witness-bribery conviction. On appeal, Paschal contends that the circuit court erred in (1) denying his motion for directed verdict on the witness-bribery charge, (2) refusing to admit evidence of bias on the part of the State's chief witness-bribery-charge witness, (3) failing to sever the witness-bribery charge, (4) finding the second-degree sexual-assault statute constitutional as it was applied to him, (5) admitting certain witness testimony during the penalty phase, and (6) rejecting proffered jury instructions. We affirm in part, reverse and remand in part, and reverse and dismiss in part.

## I. Sufficiency of the Evidence: Witness Bribery

Paschal contends that the circuit court erred in denying his motion for directed verdict on the charge of witness bribery.[2] On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *E.g., Smoak v. State,* 2011 Ark. 529, 385 S.W.3d 257. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

Arkansas Code Annotated section 5–53–108 provides in relevant part that a person commits witness bribery if he or she

(1) Offers, confers, or agrees to confer any benefit upon a witness or a person he or she believes may be called as a witness with the purpose of:

(A) Influencing the testimony of that person;

(B) Inducing that person to avoid legal process summoning that person to testify; or

(C) Inducing that person to absent himself or herself from an official proceeding to which that person has been legally summoned.

Ark.Code Ann. § 5–53–108(a)(1) (Repl. 2005). An "official proceeding" is "a proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath, including any referee, hearing examiner, commissioner, notary, or other person taking testimony or depositions in any such proceeding." *Id.* § 5–53–101(4)(A). "Testimony" means "an oral

---

**1.** The judgment and commitment order stated that the sentences on the sexual-assault counts were "to run consecutively for a total of 480 months ... with 120 suspended and 360 to serve."

**2.** Although Paschal's challenge to the denial of the directed-verdict motion was not his first point on appeal, protection of Paschal's double-jeopardy rights requires that we address such an argument prior to addressing other asserted trial errors. *E.g., Sullivan v. State,* 2012 Ark. 74, 386 S.W.3d 507.

or written statement, document, or any other material that is or could be offered by a witness in an official proceeding." *Id.* § 5–53–101(5).

Paschal, a high school teacher, had a months-long sexual relationship with eighteen-year-old A.D., a student at Elkins High School, where Paschal taught. Principal Rebecca Martin testified that on May 5, 2010, A.D. and her mother contacted school officials and informed them that A.D. and Paschal had engaged in a sexual relationship. Martin testified that Paschal told her that he knew his sexual relationship with A.D. was illegal and that he was concerned about whether his actions would have an effect on his career and his relationship with his children. Fayetteville Police Department Detective Jonathon Snyder interviewed Paschal that day in the school superintendent's office, and Paschal admitted that he had engaged in a sexual relationship with A.D. On June 2, 2010, Snyder arrested Paschal, and he was formally charged with four counts of second-degree sexual assault on August 13, 2010.

S.C., a senior at Elkins High School, testified that Paschal was his AP World History teacher during his junior year. S.C. said that A.D. was his friend and a year ahead of him in school. S.C. stated that he worked at the local Wal–Mart and that Paschal knew that he worked there. In June 2010, while S.C. was returning to work from a break, Paschal waved at him and walked up to him. According to S.C., Paschal said, "[A.D.] knows that she's not gonna get any money out of this and if it's money she wants, I'll give her a couple of thousand if she'll drop the case." S.C. testified that he attempted to contact A.D. through several of her friends, but when he was unable to make contact with her, he told Ms. Taylor, a geometry teacher at the school, what Paschal had told him. S.C. also stated that he told law enforcement

officers what Paschal had said. S.C. identified Paschal in the courtroom as the person who had asked him to contact A.D. and offer her money.

██ Paschal contends that there was no evidence presented to the jury that he had offered A.D. money through S.C. for the purpose of influencing her testimony, inducing her to avoid legal process, or inducing her to absent herself from a legal proceeding to which she had been legally summoned. Paschal states that the conversation with S.C., which occurred in June 2010, was "a month or two" before he was formally charged in August 2010, so there were no legal proceedings at issue. Paschal contends that the evidence illustrates nothing more than his attempt to resolve the matter without all the attention of a trial, much like when prosecutors offer defendants plea offers in an attempt to resolve a pending case. We find no merit in Paschal's argument.

Paschal was in no position to attempt to "negotiate" with A.D. The State has the authority to bring criminal charges, irrespective of whether the victim wishes to pursue those charges. *See, e.g., Clay v. State,* 236 Ark. 398, 403 n. 4, 366 S.W.2d 299, 303 n. 4 (1963) (noting that the State is the party in the criminal prosecution, not the victim). According to S.C., Paschal told him to tell A.D. that he would give her money if she would "drop the case" against him. While the decision to bring criminal charges was the State's and not A.D.'s, A.D.'s allegations formed the basis of the State's case, and the State needed her cooperation as a witness. When Paschal spoke to S.C., he was aware that criminal charges against him were being investigated by the police, and Paschal was likely aware that A.D. could give a sworn statement for use against him in a criminal prosecution. Finally, even though Paschal's conversation with S.C. took place

before formal charges were filed, the statute does not require that a criminal case or any other "official proceeding" actually be pending at the time of the offer. S.C.'s testimony established that Paschal offered to confer a benefit upon A.D. with the purpose of influencing her testimony. We hold that there is substantial evidence to support a conviction for witness bribery. The circuit court did not err in denying Paschal's motion for directed verdict.

## II. *Admission of Evidence of Bias*

Paschal contends that the circuit court abused its discretion in rejecting his proffered evidence of the bias of S.C. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *E.g., Rollins v. State*, 362 Ark. 279, 208 S.W.3d 215 (2005).

At trial, Paschal sought to introduce evidence that S.C.'s father was sued in 2009 in a quiet-title action by J.P. Corporation of Northwest Arkansas, a corporation in which Paschal's father held an interest. The corporation lost the lawsuit, and title to the property was quieted in S.C.'s father on May 11, 2009. During voir dire examination of S.C., S.C. testified that he lived on the property at issue in the lawsuit and that he knew that Paschal's family was "on the other side of the lawsuit." Neither S.C. nor Paschal was a party to the lawsuit, and S.C. said that he was not affected by the lawsuit "in any form or fashion." S.C. testified that the extent of his knowledge of the lawsuit was "just hearing, just second-hand, just hearing it from my parents." The circuit court concluded that the evidence was not relevant, that it had no probative value, and that it would be prejudicial.

The State contends that the circuit court did not abuse its discretion by refusing the evidence because neither S.C. nor Paschal was a party to the lawsuit, which had ended favorably to S.C.'s father. The State also points out that the lawsuit ended in May 2009, which was nearly two years before S.C.'s testimony at Paschal's trial and over a year prior to Paschal's witness-bribery attempt.

As a general rule, all relevant evidence is admissible. Ark. R. Evid. 402 (2011). Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Ark. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403.

"A witness's credibility is always an issue, subject to attack by any party." *Fowler v. State*, 339 Ark. 207, 219, 5 S.W.3d 10, 16 (1999). The scope of cross-examination extends to matters of credibility. *See* Ark. R. Evid. 611(b). A matter is not collateral if the evidence is relevant to show bias. *Fowler*, 339 Ark. at 219, 5 S.W.3d at 16. Proof of bias is "almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.*, 5 S.W.3d at 16–17 (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984)). "In other words, matters affecting the credibility of a witness are always relevant." *Id.*, 5 S.W.3d at 17.

S.C. was the State's chief witness for the witness-bribery charge, and Paschal sought to attack S.C.'s credibility by offering evidence of proof of bias. We disagree with the circuit court's finding that the evidence was not relevant. The jury should have been allowed to hear this evidence because it might have borne on the accuracy and truth of S.C.'s testimony. The circuit court abused its discretion in refusing to admit evidence of the proof of bias of S.C.

Before leaving this point, we note that, in his brief on appeal, Paschal contends that this situation—where the only evidence of guilt is the testimony of a single witness—should be treated like one in which the testimony of an accomplice is relied upon by the government and that the denial of cross-examination in such an instance may constitute a violation of the Sixth Amendment right of confrontation. Paschal did not make this argument to the circuit court; therefore, it is not preserved for our review. Our law is well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered on appeal. *E.g., Davis v. State,* 2009 Ark. 478, 348 S.W.3d 553.

### III. *Constitutionality of Arkansas Code Annotated section 5–14–125(a)(6)*

Paschal next contends that the circuit court erred in finding that section 5–14–125(a)(6) was constitutional as applied in this case. Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. *E.g., Jefferson v. State,* 372 Ark. 307, 276 S.W.3d 214 (2008). If it is possible to construe a statute as constitutional, we must do so. *Id.* Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *Id.*

Arkansas Code Annotated section 5–14–125(a)(6) (Supp.2009), in effect at the time of the crimes charged, provided that "[a] person commits sexual assault in the second degree if the person [i]s a teacher in a public school in a grade kindergarten through twelve (K–12) and engages in sexual contact[3] with another person who is [a] student enrolled in the public school and [l]ess than twenty-one (21) years of age." The record reveals that A.D. was an adult[4] when she engaged in a sexual relationship with Paschal, and the State does not dispute Paschal's contention that the sexual relationship was consensual. Paschal contends that, because he and A.D. were adults engaged in a consensual sexual relationship, the statute unconstitutionally infringes on a fundamental right. In support of his argument, Paschal relies on the United States Constitution's protection of the right to privacy, *see Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003),[5] as well as the Arkansas Constitution's protection for "all private, consensual, noncommercial acts of sexual intimacy between adults," *see Jeg-*

---

**3.** " 'Sexual contact' means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark.Code Ann. § 5–14–101(10) (Supp.2009).

**4.** A.D. testified that she was eighteen when she began having a sexual relationship with Paschal. "All persons of the age of eighteen (18) years shall be considered to have reached

the age of majority and be of full age for all purposes. Until the age of eighteen (18) years is attained, they shall be considered minors." Ark.Code Ann. § 9–25–101(a) (Repl.2009).

**5.** In *Lawrence,* the United States Supreme Court found unconstitutional a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct.

*ley v. Picado*, 349 Ark. 600, 632, 80 S.W.3d 332, 350 (2002). Paschal asserts that, because section 5–14–125(a)(6) infringes on a fundamental right and because the statute is not the least restrictive method available for the promotion of a state interest, it is unconstitutional.

The State responds that there is no fundamental right for a public high school teacher to have sex with an eighteen-year-old high school student enrolled in that public school. In support of its argument, the State cites *Talbert v. State*, 367 Ark. 262, 239 S.W.3d 504 (2006). In *Talbert*, the defendant, a minister, challenged the constitutionality of Arkansas Code Annotated section 5–14–126(a)(1)(B) (Repl. 2006), which provides that "[a] person commits sexual assault in the third degree if the person [e]ngages in sexual intercourse or deviate sexual activity with another person who is not the actor's spouse, and the *actor is* ... a member of the clergy and is *in the position of trust or authority over the victim and uses the position of trust or authority to engage in sexual intercourse or deviate sexual activity.*" (Emphasis added.)

Citing *Lawrence* and *Picado*, Talbert contended that the statute violated his federal and state constitutional rights to engage in private, consensual sex with other adults. *Talbert*, 367 Ark. at 269–70, 239 S.W.3d at 511–12. We rejected Talbert's challenge under the United States Constitution, concluding that, "substantive due process, including his right to engage in private, consensual sex, protects an individual's liberty interest under the United States Constitution (*Lawrence, supra*), but Talbert has no liberty interest to engage in sexual activity by using his position of trust and authority." *Id.* at 269,

239 S.W.3d at 511. We also rejected Talbert's challenge under the Arkansas Constitution and held that section 5–14–126(a)(1)(B) did "not infringe upon Talbert's fundamental right to have private, consensual sex" because "[t]he conduct criminalized by the statute is the use of trust and authority as a minister over individuals to engage in unwanted sexual activity with them." *Id.* at 270, 239 S.W.3d at 512. Further, we noted that the *Talbert* case was distinguishable from *Picado* because the "conduct criminalized in [*Picado*][6] was purely consensual, whereas the conduct criminalized" in *Talbert* was not. *Id.*, 239 S.W.3d at 512.

Paschal contends that *Talbert* is distinguishable from the instant case. He asserts that there is a constitutional difference between the coerced sexual conduct that was present in *Talbert* and the consensual, noncommercial acts of sexual intimacy that are present in his case. We agree. The State misapprehends the issue when it asserts that there is no fundamental right for a public high school teacher to have sex with an eighteen-year-old high school student enrolled in that school. The issue is whether the statute, as applied in this case, infringes on Paschal's fundamental right to engage in private, consensual, noncommercial acts of sexual intimacy with an adult. We hold that it does.

"[T]he fundamental right to privacy implicit in our law protects all private, consensual, noncommercial acts of sexual intimacy between adults." *Picado*, 349 Ark. at 632, 80 S.W.3d at 350. Section 5–14–125(a)(6) criminalizes consensual sexual contact between adults. While it is possible that the General Assembly intended to criminalize a teacher's use of his or her

**6.** In *Picado*, the court held that Arkansas's sodomy statute, Arkansas Code Annotated section 5–14–122, was "unconstitutional as applied to private, consensual, noncommercial, same-sex sodomy." 349 Ark. at 632, 80 S.W.3d at 350.

position of trust or authority over an adult student to procure sex, section 5–14–125(a)(6) contains no language evincing such intent. While we might be inclined to assume the General Assembly so intended, we are constrained from making such assumptions. This court strictly construes criminal statutes, resolving any doubts in favor of the accused. *E.g., Brown v. State,* 375 Ark. 499, 292 S.W.3d 288 (2009). This court cannot, and should not, by construction or intendment, create offenses under statutes that are not in express terms created by the legislature. *E.g., Williams v. State,* 347 Ark. 728, 67 S.W.3d 548 (2002). Nothing is taken as intended which is not clearly expressed, and this court is without authority to declare an act to come within the criminal laws of the state merely by implication. *See, e.g., Heikkila v. State,* 352 Ark. 87, 98 S.W.3d 805 (2003).

As applied in this case, section 5–14–125(a)(6) criminalizes consensual sexual conduct between adults and, therefore, we conclude that the statute infringes on Paschal's fundamental right to privacy.[7] A statute that infringes on a fundamental right is subject to strict-scrutiny review, and the statute cannot survive unless "a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out [the] state interest." *Picado,* 349 Ark. at 632, 80 S.W.3d at 350 (quoting *Thompson v. Ark. Social Servs.,* 282 Ark. 369, 374, 669 S.W.2d 878, 880 (1984)).

The State does not claim a compelling state interest in its brief to this court. Rather, it contends that the Arkansas Constitution clearly contemplates the preservation of a special learning environment for high school students through the age of twenty-one and that the State has a legitimate interest in protecting that environment. Citing article 14, section 1 of the Arkansas Constitution, the State avers that Arkansans aged six through twenty-one have a constitutional right to a public education in a "general, suitable and efficient" public school system, and the State is required to use "all suitable means to secure to the people the advantages and opportunities of education." The State contends that section 5–14–125(a)(6) preserves the special learning environment because it protects all high school students, regardless of their age, from the sexual advances of teachers who have special authority and control over such students. Further, the State contends that, even if the relationship is consensual, the statute is designed to protect persons, both minors and adults, from people who have power, authority, or control over them on a day-to-day basis. As we understand the argument, the State asserts that it has an interest in protecting adult students from the sexual advances of teachers

---

7. We find it perplexing that one of the dissenting justices chooses to ignore this court's binding precedent and instead turns to cases from other jurisdictions to determine whether an Arkansas statute, section 5–14–125(a)(6), as applied in this case, violates the fundamental right to privacy found in the Arkansas Constitution. *See Flaskamp v. Dearborn Pub. Sch.,* 385 F.3d 935 (6th Cir.2004) (holding that a school board's denial of tenure to a teacher who had allegedly engaged in a sexual relationship with a high school student within nine months of the student's graduation did not violate the teacher's *federal* constitutional rights); *State v. McKenzie–Adams,* 281 Conn. 486, 915 A.2d 822 (2007) (holding that a statute criminalizing sexual intercourse between a teacher and a student was not unconstitutional under the *United States Constitution* and the *Connecticut Constitution),* overruled on other grounds by *State v. Payne,* 303 Conn. 538, 34 A.3d 370 (2012); *State v. Hirschfelder,* 170 Wash.2d 536, 242 P.3d 876 (2010) (holding that a statute criminalizing sexual conduct between teachers and students was not void for vagueness and did not violate the teacher's right to equal protection under the *United States Constitution* ).

who have power, authority, or control over them.

Assuming that the State has asserted a compelling state interest and assuming that section 5–14–125(a)(6) advances that interest,[8] we must determine whether the statute is the least restrictive method available to carry out the State's interest. We recognized in *Picado* that "the State has a clear and proper role to protect the public from offensive displays of sexual behavior, to protect people from forcible sexual conduct, and to protect minors from sexual abuse by adults," 349 Ark. at 637, 80 S.W.3d at 353 (citing *Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980)), and that "criminal statutes, including those proscribing indecent exposure, rape, statutory rape, and the like, are in existence to protect the public from precisely such harms." *Id.*, 80 S.W.3d at 353. Likewise, we recognize that the State has an interest in protecting adult students from the sexual advances of teachers. But section 5–14–125(a)(6),[14] which criminalizes adult consensual sex, is not the least restrictive method available to carry out the State's interest. Moreover, the State's interest is already advanced in section 5–14–126(a)(1)(C) (Supp.2011), which prohibits a mandated reporter [9] in a position of trust or authority over a victim from using the position of trust or authority to engage in sexual intercourse or deviate activity.[10] Section 5–14–125(a)(6), as applied in this case, infringes on a fundamental right and is not the least restrictive method available for the promotion of a state interest; therefore, it is unconstitutional. Because we conclude that the statute is unconstitutional on this basis, we need not address the remaining constitutional challenges to the statute. *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822.

**8.** We must make this assumption because the State, concluding that Paschal's fundamental right to privacy was not violated, did not address Paschal's contention that the statute was subject to strict-scrutiny review.

**9.** Mandated reporters have a duty to notify the Child Abuse Hotline if they have reasonable cause to suspect that a child has been subjected to child maltreatment or that a child has died as a result of child maltreatment. Ark.Code Ann. § 12–18–402(a) (Supp. 2011). A teacher is a mandated reporter. *Id.* § 12–18–402(b)(26).

**10.** Oddly, the dissents repeatedly refer to Paschal's misuse of his position of trust or authority when that is not at issue in this case. Section 5–14–125(a)(6) is a strict-liability statute. The State was required to prove only that, while Paschal was a teacher, he had sexual contact with a student who was less than twenty-one years of age. We find appalling the statement from one of the dissenting justices that the majority's interpretation of the statute condones a teacher's misuse of trust or authority. A cursory glance at section 5–14–125(a)(6) reveals that the statute contains no language regarding trust or authority, much less the misuse of that trust or authority. The majority's interpretation can hardly condone conduct that is not mentioned in the statute.

Another dissenting justice writes that the majority has suggested that, because the words "trust or authority" are not included in the statute, "a teacher may not be aware of the fact that he or she holds such a position vis-á-vis a student, which apparently, according to the majority's reasoning, somehow permits that unknowing teacher to have sex with an eighteen-year-old student." Not only does the majority make no such suggestion, but Paschal never contended that he was unaware that he held a position of trust or authority in the school. The dissent's manufacturing of an issue is both injudicious and irresponsible.

The interpretation of section 5–14–125(a)(6) favored by the dissenting justices—which would require this court to add words to the statute and thus add elements to the crime— amounts to legislation by judicial fiat. Despite the dissents' apparent willingness to do so, we will not usurp the General Assembly's legislative role by reading language into the statute.

We feel compelled to point out that the dissenting justices would like to have before them a very different statute than what the General Assembly provided in section 5–14–125(a)(6). Regardless of how we feel about Paschal's conduct, which could correctly be referred to as reprehensible, we cannot abandon our duty to uphold the rule of law when a case presents distasteful facts.

Paschal's convictions for sexual assault in the second degree are reversed and dismissed. Finally, because we reverse and dismiss those charges, we need not address Paschal's remaining arguments on appeal.

Affirmed in part; reversed and remanded in part; reversed and dismissed in part.

DANIELSON, J., concurs in part and dissents in part.

BROWN, GUNTER, and BAKER, JJ., dissent in part and concur in part.

PAUL E. DANIELSON, Justice, concurring in part and dissenting in part.

I concur with the majority opinion to the extent that it reverses and dismisses Paschal's convictions for sexual assault in the second degree. I respectfully dissent, however, from the majority's affirmance of Paschal's conviction for witness bribery.

Arkansas Code Annotated § 5–53–108 provides, in pertinent part:

(a) A person commits witness bribery if he or she:

(1) Offers, confers, or agrees to confer any benefit upon a witness or a person he or she believes may be called as a witness with the purpose of:

(A) Influencing the testimony of that person;

(B) Inducing that person to avoid legal process summoning that person to testify; or

(C) Inducing that person to absent himself or herself from an official proceeding to which that person has been legally summoned; or

Ark.Code Ann. § 5–53–108(a) (Repl.2005). Because Paschal's statement to S.C. was clearly not an attempt to induce A.D. to avoid legal process under subsection (B), or to absent herself from an official proceeding to which she had been summoned under subsection (C), it seems to me that the sole provision under which Paschal could be convicted had to be subsection (A). Paschal's statement surely constituted an offer to confer a benefit on A.D. Even assuming that A.D. was a person he believed might be called as a witness against him, the question, then, is did Paschal offer to confer a benefit *with the purpose of* influencing A.D.'s testimony. Contrary to the majority, I cannot say that he did.

"Testimony" "includes an oral or written statement, document, or any other material that is or could be offered by a witness in an official proceeding." Ark.Code Ann. § 5–53–101(5) (Repl.2005). To constitute witness bribery, then, Paschal was required to offer or agree to confer a benefit on A.D. with the purpose of influencing her oral or written statement that was or could be offered by her in an official proceeding. In my opinion, Paschal's offer of money to "drop the charges" in no way equates to an offer of money with the purpose of influencing one's statements at an official proceeding. At the time of the offer, no official proceeding was pending, and while it may not have been within A.D.'s ability to "drop the charges," there was no evidence to demonstrate that Paschal knew or did not know of that fact. At most, Paschal's statement could be construed as an offer with the purpose of enticing a lack of cooperation with police. To construe Paschal's statement as one to

influence testimony simply reads too much into his offer.

This court must strictly construe criminal statutes and resolve any doubts in favor of the defendant. *See Williams v. State,* 347 Ark. 728, 67 S.W.3d 548 (2002). With that in mind, it is my opinion that there was insufficient evidence to sustain Paschal's conviction for witness bribery. As the majority opinion correctly points out,

> [t]his court cannot, and should not, by construction or intendment, create offenses under statutes that are in express terms created by the legislature. *E.g., Williams v. State,* 347 Ark. 728, 67 S.W.3d 548 (2002). Nothing is taken as intended which is not clearly expressed, and this court is without authority to declare an act to come within the criminal laws of the state merely by implication. *See, e.g., Heikkila v. State,* 352 Ark. 87, 98 S.W.3d 805 (2003).

Unfortunately, here, the majority is doing that which it cannot. It is construing the statute to include an act not clearly expressed. Had the General Assembly wished to do so, it could have included an offer to "drop the charges" as a type of witness bribery. It did not do so, and I therefore respectfully dissent on this issue. Because I would do so, there would be no need to address Paschal's remaining claim regarding bias.

ROBERT L. BROWN, Justice, dissenting in part and concurring in part.

The majority holds that the following statute is unconstitutional as applied to a thirty-six-year-old teacher who was engaged in a sexual affair with an eighteen-year-old high school senior for five months. I disagree and would not hold that the statute is unconstitutional as applied.

The statute in question reads as follows:

(a) A person commits sexual assault in the second degree if the person:

. . .

(6) Is a teacher in a public school in a grade kindergarten through twelve (K–12) and engages in sexual contact with another person who is:

> (A) A student enrolled in the public school; and
>
> (B) Less than twenty-one years of age.

Ark.Code Ann. § 5–14–125(a)(6) (Repl. 2009).

The majority's analysis is wrong for several reasons. As an initial matter, it erroneously equates the adult relationship in *Jegley v. Picado,* which involved consenting same-sex couples who clearly were on an equal footing as adults, to a student-teacher relationship in high school where the teacher is without question the authority figure. *See Picado,* 349 Ark. 600, 80 S.W.3d 332 (2002). In doing so, the majority skews and minimizes the role of a teacher and views a sexual affair between a high school student and teacher as merely one between consenting adults. That view distorts the facts of this case and discards the valid objective of the General Assembly to criminalize this conduct.

The majority hangs its hat in part on the fact that the relevant subsection cited above does not use the words "trust or authority" in describing the relationship between a teacher and student in grades K through 12. What the majority suggests is that without those words, a teacher may not be aware of the fact that he or she holds such a position vis-à-vis a student, which apparently, according to the majority's reasoning, somehow permits that unknowing teacher to have sex with an eighteen-year-old student. That of course is preposterous. Any teacher knows that he or she occupies a position of trust or au-

thority in the school. This court has recognized that teachers occupy a position of authority over their students. *See Logan v. State*, 299 Ark. 266, 273, 773 S.W.2d 413, 416 (1989) (recognizing the "authority relationship" between a teacher and a minor student in the context of a rape conviction); *Smith v. State*, 354 Ark. 226, 238, 118 S.W.3d 542, 549 (2003) ("School district employees are authority figures to minor children ... The State has an interest in the general welfare of children, and it certainly has an interest in making laws which punish school district employees who abuse their positions of trust and authority to facilitate inappropriate relationships with children."). For the majority to say that such authority vanishes when a student turns eighteen ignores the realities of the student-teacher relationship.

The focus of the majority opinion is on a right to privacy gleaned from our *Picado* decision. Certainly in *Picado* we held that a right to privacy exists for consenting adults to have sexual relations in the privacy of their homes. *See Ark. Dep't of Human Servs. v. Cole*, 2011 Ark. 145, at 14, 380 S.W.3d 429 (recognizing the fundamental right of privacy to engage in private, consensual, noncommercial intimacy in the privacy of the home). But this court has never held or even suggested that a fundamental right of privacy exists to enable high school teachers to have sex with the school's enrolled students. In doing so, the majority either overlooks or dismisses the inherently unequal posture that a student is in with respect to a much older teacher. Here, Paschal had been the student's teacher when she was a sophomore and junior in high school. She then became his teacher's aide, and they began their affair after that during her senior year. The evolution of this sexual relationship in the school setting is vastly different from that of the consenting adults in *Picado* and *Cole*.

When faced with this same issue of a student-teacher relationship, other jurisdictions have determined that restrictions on these relationships do not infringe on the right to intimate association or privacy. In fact, the Sixth Circuit Court of Appeals has recognized that policies restricting student-teacher sexual relationships are not even entitled to strict scrutiny review, which obviously accompanies a substantial burden on a fundamental right. *See Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 942 (6th Cir.2004). As the *Flaskamp* court wrote, only government action that has a "direct and substantial influence" on intimate association receives heightened review. *Id.* (citing *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004)). Government action has a "direct and substantial influence" on intimate association "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]." *Flaskamp*, 385 F.3d at 942 (brackets in original) (citing *Vaughn v. Lawrenceburg*, 269 F.3d 703, 710 (6th Cir.2001)).

The Sixth Circuit went on to say in *Flaskamp*:

> [I]n view of the importance of prohibiting teachers and students from beginning romantic relationships, a school board could act prophylactically in this area by prohibiting sexual relationships between teachers and former students *within a year or two of graduation.* Such a policy would prevent high school seniors from being perceived as prospects eligible for dating immediately after graduation; it would prevent inter-

ference with the education of other family members who still may be in school ...; and it would curb sexual harassment liability arising from claims that a policy against student-teacher relationships is not adequately enforced. *Id.* at 944 (emphasis added). Recognizing that *Flaskamp* did not involve a criminal statute, the myriad dangers of permitting student-teacher sexual relationships recognized by the Sixth Circuit apply equally to the facts of the case before us and reinforce the importance of the State's interest in protecting students.

The Connecticut Supreme Court has also determined that regardless of whether a fundamental right of sexual privacy exists, it would not protect sexual intimacy in the context of an *inherently coercive relationship, such as the teacher-student relationship,* wherein consent might not easily be refused. *State v. McKenzie–Adams,* 281 Conn. 486, 915 A.2d 822, 832 (2007) (emphasis added), *overruled on other grounds by State v. Payne,* 303 Conn. 538, 34 A.3d 370 (2012). Along the same lines, in *State v. Hirschfelder,* 170 Wash.2d 536, 242 P.3d 876 (2010), a high school-choir teacher who was thirty-three had sexual intercourse with one of his students. The student was eighteen at the time. The teacher was charged under a statute that criminalized sexual intercourse by school employees with a registered student of the school who was at least sixteen years old and not married to the employee, if the employee is at least sixty months older than the student. *Id.* at 878. Under Washington's law a registered student included persons up to the age of twenty-one. *Id.* at 878–80. Interestingly, when analyzing the equal-protection challenge to the statute, the *Hirschfelder* court noted that "*[u]nderstandably,* [the teacher] does not claim that K–12 school employees have a fundamental or important right to sexual

relations with registered students." *Id.* at 883 (emphasis added).

In the face of this authority, the majority in this case cites no case law for its singular proposition that a right to privacy exists to enable a high school teacher to have sex with an enrolled student. That, in itself, is telling.

The statute at issue in this case does not infringe on the non-job-related sexual activity of Paschal, or any other teacher, and it does not directly or substantially burden his right to engage in acts of sexual intimacy with other consenting adults. The State became interested in his sexual activity only after the student reported it. She testified that the relationship changed after she became Paschal's aide and began working in his classroom during eighth period. She further testified that she and Paschal began talking on a more personal level during that time and that he told her he needed a babysitter over Christmas, and she offered to babysit. She added that sometimes she and Paschal would go to his home after eighth period and that he told her she could "never say anything" about being at his home. The affair lasted for about five months.

Without question, Paschal used his job as a teacher to get close to an enrolled student to gain her trust and to propose that she come alone to his home after school. Even assuming that Paschal is entitled to strict-scrutiny review of the statute, which I do not for a moment concede, the statute is narrowly tailored to serve the State's compelling interest in maintaining the integrity of the educational system because it only targets sexual conduct that occurs between teachers and enrolled students and does not directly or substantially burden non-job-related sexual conduct of teachers. *See Cole,* 2011 Ark. 145, at 19, 380 S.W.3d 429 (holding that the burden on the fundamental

right to sexual intimacy is direct and substantial when the State requires a person to give up the right entirely in order to qualify as an adoptive or foster parent).

Once this opinion is handed down, there will be nothing to prevent sexual contact between high school teachers and enrolled students who have turned eighteen. This will cause significant disruption in our high schools and have a deleterious impact on education in general and the teacher-student dynamic in particular. That is completely contrary to the State's duty, which is to protect its students in the public school setting against sexual advances and exploitation by teachers. That duty has been completely jeopardized and undermined by today's decision.

I respectfully dissent on this point and would affirm the conviction and sentence for second degree-sexual assault.

On the issue of admission of evidence to show S.C.'s bias, which was disallowed, I agree that the circuit judge erred on this point. Accordingly, I would reverse the judgment for witness-bribery and send that count back for further proceedings.

GUNTER and BAKER, JJ., join.

KAREN R. BAKER, Justice, dissenting in part and concurring in part.

I concur with the majority's conclusions that Paschal's conviction for witness bribery is supported by substantial evidence, but that the trial court erred in refusing to admit evidence of bias of S.C. However, I do not agree with the reversal and dismissal of his conviction for sexual assault in the second degree based on the majority's holding that Arkansas Code Annotated section 5–14–125(a)(6) is unconstitutional. Because I believe the majority's conclusion that Paschal has a constitutionally protected fundamental privacy right to have sexual contact with an 18–year–old student at the school where he teaches is absurd, I dissent.

Paschal argues that section 5–14–125(a)(6) is unconstitutional as applied to him. He asserts that because he and the student, A.D., were adults in a consensual sexual relationship, the statute infringes on his fundamental right to privacy under the U.S. Constitution, *see Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the Arkansas Constitution, *see Jegley v. Picado,* 349 Ark. 600, 80 S.W.3d 332 (2002). He contends that because the statute infringes on a fundamental right, this court should analyze it under strict scrutiny. The majority agrees.

Paschal was convicted under the version of Arkansas Code Annotated section 5–14–125(a)(6) (Supp.2009), which provided, in pertinent part, that a person commits second-degree sexual assault if the person is "a teacher in a public school in a grade kindergarten through twelve (K–12) and engages in sexual contact with another person who is a student enrolled in the public school and less than twenty-one (21) years of age." The effect of striking this provision in our Code is to legalize sexual contact between teachers and students who have not reached the age of 21. The majority does this by relying on the premise that a teacher and a student have a privacy right to engage in consensual sexual contact. I disagree. The right to privacy does not authorize such behavior between a high-school teacher and a student who is required under our laws to be in that school. *See* Ark.Code Ann. § 6–18–211 (requiring mandatory attendance for students in grades 9 through 12).

The majority draws a distinction between the instant case and our decision in *Talbert v. State,* 367 Ark. 262, 239 S.W.3d

504 (2006). In *Talbert,* a minister was convicted of third-degree sexual assault. He argued that the State cannot intrude into an individual's right to engage in private, consensual sex with other adults, citing *Lawrence, supra,* and *Jegley, supra.* This court emphatically concluded that the statute did not infringe upon Talbert's right to have private, consensual sex with other adults. Rather, the "conduct criminalized by the statute [in *Talbert*] is the use of trust and authority as a minister over individuals to engage in unwanted sexual activity with them." *Talbert,* 367 Ark. at 270, 239 S.W.3d at 512. The statute before us now similarly criminalizes the conduct of a K–12 public-school teacher in having sexual contact with another person who is a student in the public school and less than 21 years of age. Unlike *Talbert,* section 5–14–125(a)(6) does not include the language stating that the defendant "is in a position of trust or authority." However, we have previously recognized that the "State has an interest in the general welfare of children, and it certainly has an interest in making laws which punish school district employees who abuse their positions of trust and authority to facilitate inappropriate relationships with children." *Smith v. State,* 354 Ark. 226, 238, 118 S.W.3d 542, 549 (2003). In *Smith,* the statute at issue penalized school-district employees or others in a position of trust or authority. It is illustrative of the fact that the legislature did not see a need to penalize only those school-district employees who were in a position of trust or authority: the relationship between teacher and student is inherently one that places the teacher in a position of trust or authority by its very nature. By concluding that a teacher has a fundamental privacy right to engage in sexual contact with his 18–year–old student, the majority condones the misuse of this position of trust or authority. I can not agree that a teacher has a right protected by our constitution to engage in sexual contact with a student.

I conclude the statute does not involve a fundamental right. If a statute does not burden a fundamental right or targets a suspect class, the legislative classification will be upheld if it bears a rational relation to some legitimate result. *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *see also Bosworth v. Pledger,* 305 Ark. 598, 810 S.W.2d 918 (1991). The Texas Court of Appeals considered a challenge to a similar statute, and in concluding that the statute was constitutional, stated as follows: "We think it clear the State has at least a rational basis for passing the statute at issue. Protecting students in primary and secondary schools—even those of age—from the pressures, emotional strain, conflicts, distractions, and other difficulties brought on by sexual conduct with persons, not their spouse, employed at the students' schools is within the State's legitimate interest." *In re Shaw,* 204 S.W.3d 9, 17–18 (Tex.App. 2006). I would likewise hold that the State has a legitimate interest in protecting high-school students from the difficulties that arise from sexual contact with teachers at their schools, conclude that the statute is constitutional, and affirm Paschal's convictions for sexual assault.

BROWN and GUNTER, JJ., join.