Josephine Linker Hart, Justice, concurring in part and dissenting in part. The citizens of the State of Arkansas are guaranteed fundamental rights to petition for initiatives and referendums. Through amendment 7 of the Arkansas Constitution, the people of our state have reserved to themselves the power to directly participate in the legislative process by “proposing] legislative measures, laws, and amendments to the Constitution.” Ark. | ¡.¿Const, amend. 7. Amendment 7 “permits the exercise of the power reserved to the people to control, to some extent at least, the policies” of the state, counties, and municipalities through the petition process. Reeves v. Smith, 190 Ark. 213, 215, 78 S.W.2d 72, 73 (1935). Through the explicit text of the amendment, the Arkansas Constitution is clear that the General Assembly may not restrict, hamper, or impair these rights. Because Act 1413 impermissibly interferes with the initiative and referendum processes that amendment 7 so jealously guards, I believe it is unconstitutional in its entirety. Accord-, ingly, I must dissent, in part, from the majority’s decision. The Arkansas Constitution provides that the rights to initiative and referendum are of paramount importance to the people of Arkansas, identifying them respectively as the first and second powers “reserved by the people.” Ark. Const, amend. 7. Amendment 7 contains express language prohibiting the General Assembly from passing any law “in any manner interfering with the freedom of the people in procuring petitions.” Id. The amendment further provides, “No legislation shall be enacted to restrict, hamper or impair the exercise of the rights herein reserved to the people.” Id. Beyond doubt, the power retained by the citizens to initiative and referendum are fundamental rights guaranteed by the constitution. When a statute impinges on a fundamental right, strict scrutiny applies, and it cannot survive unless “a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out [the] state interest.” Jegley v. Picado, 349 Ark. 600, 632, 80 S.W.3d 332, 350 (2002); see also Martin v. Kohls, 2014 Ark. 427, 444 S.W.3d 844 (right to vote); Paschal v. State, 2012 Ark. 127, 388 S.W.3d 429 (right to privacy); Under v. Under, 348 Ark. 322, 72 S.W.3d 841 (2002) (right to parent); Griffen v. Ark. Judicial Discipline & Disability Comm’n, 355 Ark. 38, 130 S.W.3d 524 (2003) (right to free speech); Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee, 351 Ark. 31, 91 S.W.3d 472 (2002) (right to an adequate education); Bennett v. Nat’l Ass’n for Advancement of Colored People, 236 Ark. 750, 370 S.W.2d 79 (1963) (right to association and access to the courts). Amendment 7 does provide that the legislature has an interest in enacting laws to facilitate the operation of the amendment and to prohibit and penalize perjury, forgery, and fraudulent practices. However, Act 1413 abuses and exceeds this restricted grant of power. The majority has determined that section 13 and parts of section 18 are unconstitutional, and I agree with that analysis; however, even assuming that the remaining provisions of the Act could withstand examination individually, the cumulative effect of the Act is more than the constitution will bear. Under a strict-scrutiny analysis, the State must show a compelling governmental interest that the Act is narrowly tailored to meet. Griffen, supra. While I agree that prohibiting fraud is a compelling governmental interest, Act 1413 goes too far; it is not narrowly tailored to meet that goal. As a result, it fails under strict scrutiny. In examining whether the Act is narrowly tailored, we must consider the undisputed testimony concerning the wide reach of the Act. The testimony before the circuit court was that Act 1413 imposed arduous requirements to the procedures applicable to circulating and filing petitions for initiatives and referendums. Even assuming that any one of these requirements, standing alone, could pass constitutional muster, the cumulative result of the ^extensive changes to the initiative and referendum process is to deter Arkansans from exercising their fundamental rights under amendment 7. For example, the Act clearly invokes criminal liability for sponsors and canvassers who fail to comply with its edicts, but yet muddles its provisions with ambiguous terms, making it difficult or impossible to determine whether one is engaging in illegal conduct. We have held that a statute is unconstitutional when it discourages the exercise of a fundamental right by imposing criminal liability through the use of vague and unspecified terms. Neal v. Still, 248 Ark. 1132, 455 S.W.2d 921 (1970). In this case, the plaintiffs testified to precisely such a result from Act 1413 when they stated that the threat of criminal liability on sponsors and paid canvassers throughout Act 1413 was daunting and imposed a chilling effect on their desire to mount campaigns for initiatives and referenda. Additionally, the undisputed testimony before the circuit court was that the Act added insurmountable obstacles in the counting and discarding of signatures collected for petitions and the prohibition on collecting signatures following the petition’s initial submission to the Secretary of State. Accordingly, after reviewing the testimony at trial, the circuit court properly concluded that “the effects of Act 1413 are crushing to the citizens who wish to bring their issues directly to the people.” The majority opinion does not acknowledge the factual testimony regarding the cumulative effect of the Act on the powers of initiative and referendum but rather limits its discussion to the individual parts of the Act in seclusion. In my view, the strict language of amendment 7 requires more than a piecemeal analysis to ensure that the General Assembly has not enacted a law that will restrict, hamper, or impair the exercise of the rights of initiative and |'^referendum. I agree with the circuit court’s finding and would hold that the totality of the Act results in an overly burdensome gauntlet whereby citizens of Arkansas are effectively denied the fundamental rights granted through amendment 7. The majority contends that certain provisions of the Act can be upheld because the legislative purposes are to facilitate the operation of amendment 7, and to prohibit and punish fraud. While I have no quarrel with the stated legislative purposes, they are insufficient to justify Act 1413 because of the law’s sweeping consequences. We have held that an Act is invalid if it has an overall unconstitutional effect, even if the legislative purpose underlying the Act is legitimate. Ports Petroleum Inc. of Ohio v. Tucker, 323 Ark. 680, 916 S.W.2d 749 (1996). In Ports Petroleum, this court examined a challenge to Act 380 of 1993, which precluded below-cost sales of motor fuel. This court held that, although the statute fell within the State’s proper police power and was directed at a “laudable purpose ... to foment competition and prevent predation by prohibiting subsidizing below-cost pricing at the retail level,” the statute was nonetheless unconstitutional because it was overbroad in its reach. Id. at 680, 916 S.W.2d at 755. Similarly, in the instant case, it is of no consequence that the General Assembly purported to act pursuant to its limited powers under amendment 7 because Act 1413 is over-broad and impairs the rights of the people to initiative and referendum far beyond what is necessary to achieve those purposes. In short, while Act 1413 does not eliminate the rights to initiative and referendum outright, the effect of its pervasive changes to the petition process will beget such a result — it |¾⅝⅛ death by a thousand cuts. Accordingly, I would hold that Act 1413 is unconstitutional in its entirety. Baker and Goodson, JJ., join in this concurrence.