(288 P.3d 494)
No. 106,435

STATE OF KANSAS, *Appellee*, v. CHARLES L. EDWARDS, *Appellant*.

 Opinion filed November 2, 2012. 

*Steven D. Mank,* of Ariagno, Kerns, Mank & White, L.L.C., of Wichita, and *Kristen B. Patty*, of Wichita, for appellant.

*Lesley A. Isherwood,* assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before McANANY, P.J., HILL, J., and ALLEN R. SLATER, District Judge, assigned.

HILL, J.: In our system of ordered liberty, ordinances and statutes regulate the actions of people—while constitutions regulate the actions of states. In this case, we are confronted with the question whether the State has exceeded constitutional bounds by enacting a law making sexual relations between a teacher and student a crime. Charles L. Edwards, a Wichita area high school music instructor, engaged in sexual intercourse with one of his 18-year-old high school students. In this appeal of his unlawful sexual relations conviction, Edwards contends the statute defining his conduct as a crime is unconstitutional because it infringes upon his fundamental right, while in the privacy of his home, to engage in sexual conduct with a consenting adult. In sharp contrast, the State maintains Edwards has no constitutional right to have sexual relations with one of his students and there are legitimate reasons to make such conduct a crime. Because the statute applied in this case implicitly recognizes the disparity of power inherent in the teacher/student relationship, we conclude that the right of privacy does not encompass the right of a high school teacher to have sex with students enrolled in the same school system. We hold the statute in question is constitutional. Therefore, we affirm Edwards's conviction.

*There are no factual disputes here.*

This prosecution is straightforward and uncomplicated. Edwards waived his right to a jury trial and made an agreement with the State about the facts. At Edwards' bench trial, the parties stipulated that at the times pertinent to the charge:

- Edwards was a 30-year-old choir teacher employed by Wichita U.S.D. No. 259.

- A.C.A. was a student enrolled at the same high school where Edwards was employed.
- A.C.A. was 18 years old and had reached the age of majority and was an adult before March 2010.
- A.C.A. was the natural mother of a child as of March 2010 (although the State disputes the relevancy of this fact).
- Edwards and A.C.A. were not married to each other.
- A.C.A. willingly transported herself to Edwards' home in Sedgwick County and supplied a condom worn by Edwards.
- Edwards engaged in consensual sexual intercourse with A.C.A.
- This act occurred on or about March 3, 2010, in Sedgwick County.
- That in return for the submission of this matter to the court for bench trial on stipulated facts, the State agreed to dismiss Counts 2 and 3 of the complaint/information.

Weighing these stipulations, the district court found Edwards guilty of unlawful sexual relations in violation of K.S.A. 21-3520(a)(8). See K.S.A. 2011 Supp. 21-5512(a)(8).

On appeal, Edwards argues K.S.A. 21-3520(a)(8) is unconstitutional because it infringes upon a privacy right protected by both the United States Constitution and the Kansas Constitution—the right to engage in private, consensual sexual conduct. We look first at the right of privacy.

*We track the Supreme Court's search for the right of privacy.*

We begin our analysis by pointing out there is no specific language in either the Kansas Constitution or the United States Constitution guaranteeing the right to privacy. A series of cases dealing with contraception, pregnancy, and consensual sexual relations established this court-created right of privacy, when a court is considering intimate conduct.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution states simply: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." But the question that arises is what liberty interests are protected by that Amendment? Our constitutional jurisprudence has placed privacy on the periphery, where it is implicitly recog-

nized because of the existence of other more certainly stated rights in the Bill of Rights. It is a right created by inferences. For want of a better word, the astronomical term "penumbra" has been used to communicate that the right to privacy arises in the periphery, at the edge next to the more clearly stated rights. Justice Douglas wrote in *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965): "[S]pecific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that give them life and substance. [Citation omitted.] Various guarantees create zones of privacy." *Griswold*, striking down Connecticut's ban against selling contraceptives as it applied to married persons, certainly implied there was, at least for married persons, an implicit right to marital privacy. 381 U.S. at 485-86. The cases that followed *Griswold* expanded the "zones of privacy."

In *Eisenstadt v. Baird*, 405 U.S. 438, 448-54, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972), the Supreme Court pushed past *Griswold* by rejecting Massachusetts' law banning the sale of contraceptives to unmarried persons, ruling the law impaired their personal rights, there was no rational basis for the law, and the law was a violation of equal protection. Next, the Supreme Court announced its ruling in *Carey v. Population Services International*, 431 U.S. 678, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977), where the Court overturned three New York rules: one against selling contraceptives to people younger than 16, one requiring contraceptives to be sold only by licensed pharmacists, and a third banning advertisements for these items or displaying them.

Even though the "outer limits of the substantive sphere" of protected liberties have not been defined, the United States Supreme Court has indeed recognized certain liberties as protected—including a right of personal privacy or a guarantee of certain zones of privacy. *Planned Parenthood of Southeastern PA. v. Casey*, 505 U.S. 833, 848, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). These zones of privacy includes certain rights deemed "fundamental"— such as those related to marriage, procreation, contraception, family relationships, and child rearing. *Roe v. Wade*, 410 U.S. 113, 152-53, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). The substantive component of the Due Process Clause protects only those rights

considered to be fundamental. These "fundamental" rights include those clearly enumerated in the Bill of Rights, along with some other rights the Supreme Court has recognized as requiring constitutional protection. See *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995).

But the case most pertinent to this appeal is *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). In *Lawrence*, the United States Supreme Court held the Texas law against homosexual sodomy was unconstitutional. In the majority's view, the Texas statute furthered no legitimate state interest which would justify its intrusion into an individual's intimate personal and private life. The case was resolved by the Court deciding the petitioners were free, as adults, to engage in private conduct in the exercise of their liberty under the Due Process Clause. 539 U.S. at 560.

From this line of cases, we conclude that a court-recognized constitutional right to privacy is now out of the shadows and has become clearer with each Supreme Court case dealing with the subject. But we caution that liberty must never be confused with license.

*We turn to the statute at issue.*

The criminal charge here arises under K.S.A. 21-3520(a)(8), which defines unlawful sexual relations as engaging in consensual sexual intercourse, lewd fondling or touching, or sodomy with a person who is not married to the offender if

"the offender is a teacher or a person in a position of authority and the person with whom the offender is engaging in consensual sexual intercourse, not otherwise subject to subsection (a)(2) of K.S.A. 21-3502, or subsection (a)(1) of K.S.A. 21-3504, and amendments thereto, lewd fondling or touching, not otherwise subject to K.S.A. 21-3503, or subsection (a)(2) or (a)(3) of K.S.A. 21-3504, and amendments thereto, or sodomy, not otherwise subject to subsection (a) of K.S.A. 21-3505 or subsection (a)(1) or (a)(2) of K.S.A. 21-3506, and amendments thereto, is a student enrolled at the school where the offender is employed."

Significantly, according to the statute, a "teacher" includes teachers, supervisors, principals, superintendents, and any other professional employees in any public or private schools offering grades kindergarten through 12. K.S.A. 21-3520(b)(9). We note

that other sections of the statute similarly prohibit sexual conduct between department of corrections employees and inmates, parole officers and parolees, and SRS employees and their clients or patients. See K.S.A. 21-3520(a)(1), (2), and (7).

It is beyond dispute that the interpretation of a statute and the determination of its constitutionality are questions of law over which an appellate court has unlimited review. When a court considers the constitutionality of a statute, the court must presume the statute is constitutional. Consistent with this principle, all doubts must be resolved in favor of the statute's validity; a court must interpret the statute in a manner that makes it constitutional if there is any reasonable way to do so within the apparent intent of the legislature in passing the statute. *State v. Laturner,* 289 Kan. 727, 735, 218 P.3d 23 (2009).

When read in its entirety, it is clear that the intent of this statute is to prohibit sexual conduct of certain persons who have authority over other persons where the ability to freely consent is questionable.

*It is important to decide if a fundamental right is involved here.*

Because of prior United States Supreme Court rulings, the determination whether a fundamental right has been implicated is important because it makes a difference in what state interest is at stake. If a fundamental right or interest is involved, a state law limiting that fundamental right can be justified only *by a compelling state interest. Roe,* 410 U.S. at 155. In *Planned Parenthood,* 505 U.S. at 929, the Court said that limitations on the right to privacy are permissible only if they survive strict constitutional scrutiny—*i.e.,* if the government can demonstrate the limitation is both necessary and narrowly tailored to serve a compelling governmental interest. On the other hand, if a fundamental right or interest is not implicated, the statute at hand is reviewed under the rational basis test. Under this test, a statute withstands a constitutional challenge as long as the State identifies *a legitimate state interest that the legislature could rationally conclude was served by the statute.* See *Romer v. Evans,* 517 U.S. 620, 631, 116 S. Ct.

1620, 134 L. Ed. 2d 855 (1996). Obviously, the second test is easier to pass than the first.

Interestingly, the parties here frame the question whether K.S.A. 21-3520(a)(8) infringes a fundamental right much differently. Edwards suggests (without explicitly saying so) that the fundamental right at stake in this case is the right to consensual, private sex. The State frames the question as whether teachers have a right to consensual, private sex with their students. Edwards frames the issue in broad terms speaking of persons in general, while the State narrows the issue focusing on persons in authority, such as teachers. We will, just as the statute does, focus on the specific question and not the general.

We turn first to review cases from other jurisdictions.

*Other state courts have ruled this is not a fundamental right.*

No reported Kansas case has addressed whether a teacher has a fundamental right to engage in consensual sexual relations with adult students *or* whether there is a more general fundamental right to consensual sex between adults. When courts in other jurisdictions have addressed constitutional challenges to statutes similar to K.S.A. 21-3520(a)(8), those courts have applied a rational basis test when upholding the constitutionality of the statutes— meaning the courts have concluded such statutes do not implicate a fundamental right.

In *State v. Hirschfelder*, 170 Wash. 2d 536, 242 P.3d 876 (2010), the Washington Supreme Court upheld a statute criminalizing sexual intercourse between school employees and students who are at least 16 years old. Hirschfelder was convicted under the statute after having sex with an 18-year-old student.

Hirschfelder challenged the constitutionality of the statute by arguing it violated his equal protection rights—complaining the statute did not apply to some school employees, such as those who interacted with students through certain school programs. On appeal, the Washington Supreme Court noted that the level of scrutiny in equal protection claims depends on the nature of the classification or rights involved, noting a strict scrutiny review applies to laws burdening fundamental rights while a rational basis review

applies when no fundamental right is involved. 170 Wash. 2d at 550. Noting Hirschfelder was not claiming school employees have a fundamental right to sexual relations with students, the court applied a rational basis review to uphold the statute. 170 Wash. 2d at 550-51. Quoting from a prior case, the court reasoned that student safety from sexual exploitation is important:

" 'The statute singles out public school employees because they have unique access to children, often in an unsupervised context, and can use that access to groom or coerce children or young adults into exploitive or abusive conduct. Given the important goals of providing a safe school environment for children and preventing the sexual exploitation of children, this distinction has a basis that is rationally related to those important and compelling government purposes.' " 170 Wash. 2d at 551 (quoting *State v. Clinkenbeard*, 130 Wash. App. 552, 567, 123 P.3d 872 [2005]).

Next, we turn to a case from Connecticut. In *State v. McKenzie-Adams*, 281 Conn. 486, 489-90, 915 A.2d 822 (2007), *overruled in part on other grounds by State v. Payne*, 303 Conn. 538, 34 A.3d 370 (2012), the defendant challenged a state statute prohibiting sexual intercourse between a school employee and a student. In that case, the defendant had engaged in sexual activity with two 16-year-old students. On appeal from his convictions, the defendant claimed the state statute violated his right of privacy under the state and federal Constitutions, which he claimed included the right to engage in noncommercial consensual sex with other adults. Notably, Connecticut law grants minors the legal capacity to consent to sex at age 16.

While addressing the issue on appeal, the Connecticut Supreme Court said it need not decide whether a fundamental right of sexual privacy exists generally because even if such a right exists, it does not protect sexual conduct in the context of an inherently coercive relationship such as the teacher-student relationship where consent might not easily be refused. 281 Conn. at 498-99. Applying the rational basis test, the court concluded the right of privacy does not encompass the right of a teacher to have sex with students enrolled in the same school system. 281 Conn. at 502. Noting the defendant's claim that *Lawrence* establishes a fundamental right to sexual privacy, the court said it need not determine whether

*Lawrence* established such a right because the defendant's conduct would not be protected by that right. The court said this was because of the "disparity of power inherent in the teacher-student relationship." 281 Conn. at 506.

In determining the Connecticut statute was rationally related to a legitimate government interest, the court reasoned that the State has an interest in providing a safe and healthy educational environment for school students. The court noted that school employees have unique access to students and are vested with great trust and confidence by the school, parents, and public. The court opined that the legislature could have sought to preserve or strengthen that trust by prohibiting school employees from misusing their access to students as a conduit for sex. The court said the legislature could also have concluded that a sexually charged learning environment may confuse, disturb, and distract students, thereby undermining the quality of education in the state. 281 Conn. at 507-08.

The Connecticut court concluded that because of the unique position of trust and the unsupervised access teachers have to coerce students into sexual conduct, no educational interest is promoted by such conduct and it should be prohibited:

"Elementary and secondary schoolteachers are entrusted with the important task of cultivating and educating impressionable young minds. Thus, not only are teachers afforded unique access to students, they also are vested with significant authority and control over those students. As such, a teacher easily could use his or her position of trust and authority to coerce a student into a sexual relationship. Indeed, in light of the significant disparity of power inherent in the teacher-student relationship, a student reasonably may not be able to refuse a teacher's sexual advances. Because the state has a strong interest in protecting and educating the elementary and secondary school students of this state, and because the defendant has failed to highlight any societal interest furthered by a recognition of a state constitutional right of sexual privacy between a teacher and a student, we conclude that this . . . factor weighs heavily in favor of the state. [Citation omitted.]" 281 Conn. at 514-15.

Moving on, we note that the Texas Court of Appeals in *In re Shaw*, 204 S.W.3d 9 (Tex. App. 2006), also upheld a state statute criminalizing sexual contact between school employees and students. There, the defendant first claimed the statute was overbroad

and violated his rights under the First Amendment to the United States Constitution because it applied to all students, regardless of their age, and infringed upon his right to engage in consensual sex that other adults could engage in freely. The court on appeal rejected these arguments, holding the statute is not impermissibly broad when judged in relation to the statute's legitimate sweep. The court observed that a vast majority of secondary school students are not adults. 204 S.W.3d at 15. The court also rejected the defendant's next argument, that the statute violates the Equal Protection Clause. In doing so, the court applied a rational basis test, noting Shaw had failed to demonstrate that school employees are a protected class. The court upheld the statute under a rational basis review, reasoning that protecting students from the pressures, emotional strain, conflicts, distractions, and other difficulties brought on by sexual conduct with school employees is a legitimate state interest. 204 S.W.3d at 18.

Finally, in a civil context, the Sixth Circuit Court of Appeals in *Flaskamp v. Dearborn Public Schools*, 385 F.3d 935 (6th Cir. 2004), upheld the constitutionality of a school board's decision to deny tenure to a teacher based on her sexual conduct with a former student. Flaskamp filed a 42 U.S.C. § 1983 (2000) action against the school and its board members alleging the denial of tenure violated her Fourteenth Amendment rights—including her right to intimate association, right to privacy, and right to be free from arbitrary state action.

In rejecting Flaskamp's argument that the statute burdened her right to intimate association, the court reasoned that only governmental action that has a direct and substantial influence on intimate association receives strict scrutiny review. 385 F.3d at 942. The court concluded the board's action did not directly and substantially affect Flaskamp's right of association, noting it did not prevent teachers from dating a "wide range" of other adults and there was a plausible policy reason for the statute under the rational basis test. 385 F.3d at 943-44. In rejecting Flaskamp's argument that the board violated her right to privacy, the court again reasoned that the board's action did not directly and substantially affect her right of privacy. 385 F.3d at 944-46.

*We examine a ruling of the Arkansas Supreme Court cited by Edwards.*

Only one case cited by Edwards supports the view that a fundamental right is at stake here, so that a strict scrutiny review should apply. In *Paschal v. State*, No. CR 11-673, 2012 Ark. 127, 388 S.W.3d 429, the Arkansas Supreme Court determined that a state statute criminalizing sexual conduct between a teacher and a student (who is younger than 21) violated the Arkansas Constitution. 2012 WL 1034538, at *8-15. There, high school teacher Paschal was engaged in a consensual sexual relationship with an adult student. After Paschal was convicted of sexual assault under the relevant statute, Paschal challenged the statute on the basis that it infringed upon his fundamental rights.

On appeal, the State argued there is no fundamental right for a teacher to have sex with an 18-year-old student. The Arkansas Supreme Court rejected the State's characterization of the issue, instead framing the issue as "whether the statute, as applied in this case, infringes on Paschal's fundamental right to engage in private, consensual, noncommercial acts of sexual intimacy with an adult." 2012 WL 1034538, at *10-11. Applying a strict scrutiny review, the court held that the statute criminalizes consensual sex between adults and, therefore, infringes on the fundamental right to privacy. 2012 WL 1034538, at *11-12. For support, the court noted that although the General Assembly may have *intended* to criminalize a teacher's use of his or her position of trust or authority to procure sex, the statue did not specifically state such an intent. 2012 WL 1034538, at *11. And according to the court, even if the State had asserted a compelling state interest (*i.e.*, preserving the learning environment and protecting students from teachers who have authority and control), the statute was not the least restrictive method available to carry out this interest. 2012 WL 1034538, at *13. The court noted another state statute that was available to advance the State's interest—one that prohibits a person in a position of trust or authority over a victim from using that position to gain sex. 2012 WL 1034538, at *14.

The Arkansas Supreme Court specifically relied upon a prior Arkansas case in which the court construed its state constitution as

protecting all private, consensual, noncommercial acts of sexual intimacy between adults. 2012 WL 1034538, at *9; see *Jegley v. Picado*, 349 Ark. 600, 632, 80 S.W.3d 332 (2002). In *Jegley*, the court held the fundamental right to privacy implicit in the Arkansas Constitution protects all private, consensual, noncommercial acts of sexual intimacy between adults and struck down the Arkansas sodomy law. 349 Ark. at 632.

In Kansas, no court has ever construed our state constitution in such a manner. Also, Edwards does not argue that our Kansas Constitution provides such protection for private, consensual, noncommercial acts of sexual intimacy between adults, as the Arkansas Constitution provides.

*We conclude that no fundamental right is involved here.*

The United States Supreme Court in *Lawrence*—the case most frequently cited to support the right to consensual sexual privacy—did not make explicit whether it viewed this right as a fundamental right. At one point the Court said the "right to liberty" under the Due Process Clause gives homosexual persons the right to engage in sodomy without State intervention—thereby suggesting a fundamental right to sexual privacy was at stake. But the Court's ultimate conclusion was that the Texas statute furthered "no legitimate state interest," thereby suggesting the Court applied a rational basis review. 539 U.S. at 578. We find it significant that some federal courts have construed *Lawrence* as failing to recognize a fundamental right to sexual privacy. See *Muth v. Frank*, 412 F.3d 808, 817-18 (7th Cir. 2005); *Williams v. Attorney General of Ala.*, 378 F.3d 1232, 1236 (11th Cir. 2004).

Finally, in two of the key Supreme Court cases Edwards relies upon—*Roberts* and *Lawrence*—the Court's focus was on whether *certain personal relationships* are afforded constitutional protection. In *Roberts v. United States Jaycees*, 468 U.S. 609, 619, 621-22, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984), the Court found that the Jaycees' membership policies did not create relationships worthy of constitutional protection, while the *Lawrence* court held that adult homosexual relationships were protected relationships. *Lawrence*, 539 U.S. at 563-64, 578. The *Roberts* Court explained

there are some "limitations on the relationships that might be entitled to . . . constitutional protection." 468 U.S. at 619.

The teacher/student sexual relationship is not a relationship that warrants protection as a fundamental right. We will therefore apply a rational basis test in reviewing K.S.A. 21-3520(a)(8).

*There is a legitimate state interest rationally promoted by this law.*

We note, as other courts have done, that teachers have constant access to students, often in an unsupervised context. Thus, teachers are in a unique position to groom or coerce students into exploitive or abusive conduct. It is uncontestable that the State must provide a safe school environment for students, which includes preventing the sexual exploitation of students. Teachers are vested with a great deal of trust by the school districts, the parents, the public, and the students themselves. Our legislature has sought to preserve that trust by prohibiting teachers from misusing their access to students as a means to obtain sex. A sexually charged learning environment would confuse, disturb, and distract students, thus undermining the quality of education in Kansas. See *McKenzie-Adams*, 281 Conn. at 507-08; *Hirschfelder*, 170 Wash. 2d at 551.

We find it exceedingly important that the United States Supreme Court in *Lawrence* specifically noted: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who *are situated in relationships where consent might not easily be refused.*" (Emphasis added.) 539 U.S. at 578.

This case *does* involve persons who are situated in a relationship where consent may not be easily refused. In Kansas, children are required by law to attend school "continuously" and are only exempt from this requirement at age 16 or 17 by written parental consent, by court order, or in other circumstances not relevant here. See K.S.A. 2011 Supp. 72-1111(a), (b). Students are a captive audience in the classrooms, the gymnasiums, and the music practice halls of this state. Students very well may not have the necessary level of maturity to remove themselves from a sexually charged situation.

Equally important is the fact that a different statute, K.S.A. 21-3522, makes voluntary sexual relations with children younger than 16 a crime. This is commonly referred to as the age of consent. This means if we were to strike down K.S.A. 21-3520, there would be no restriction against teachers having sexual relations with children who are 16 and 17, as well as those who are 18 years old as the case was here. We are not prepared to hold that the maturity level of a 16-year-old is comparable to another student who is 18. We cannot say that a 16-year-old student has the same ability to refuse consent to sexual relations with a teacher as a student who is 18.

Going further along this line, we note that the legislature in 2007 removed from the unlawful sexual relations statute, K.S.A. 21-3520(a)(8), any language concerning the age of the student. See L. 2007, ch. 172, sec. 2. When the legislature revises an existing law, it is presumed the legislature intended to change the law from what existed prior to the amendment. It is likewise presumed the legislature does not intend to enact useless or meaningless legislation. *State v. Sedillos*, 279 Kan. 777, 782, 112 P.3d 854 (2005). From this amendment, we conclude that the age of the student is not as important to the legislature as the relationship of teacher/student. Not even Edwards argues that a social interest is promoted by teachers and students dating.

Moreover, K.S.A. 21-3520(a)(8) is narrowly tailored to serve the State's compelling interest. The statute does not infringe upon any sexual activity unrelated to the job of teachers and does not prevent teachers from having sexual relationships with adults who are not students.

We have several reasons why we are not persuaded by *Paschal*. First, as pointed out previously, in reaching its holding the *Paschal* court specifically cited Arkansas precedent in which the state constitution had been construed as protecting all private, consensual, noncommercial acts of sexual intimacy between adults. 2012 WL 1034538, at *9. Similar precedence is lacking in Kansas. Second, as one of the several dissenting justices pointed out in *Paschal*, the majority in that case "skews and minimizes the role of a teacher" and views the sexual relationship as merely one between consent-

ing adults. 2012 WL 1034538, at *18 (Brown, J., concurring in part and dissenting in part; joined by Gunter and Baker, JJ.). Our view of the teacher/student relationship is not so narrow.

But more importantly, the *Paschal* majority emphasized that the Arkansas statute did not specifically state that the teacher's behavior was criminal because he or she is in a *position of trust or authority*. 2012 WL 1034538, at *11. There is a specific Arkansas statute making it a crime to use a position of trust or authority to coerce another into having sexual relations. See Ark. Code Ann. § 5-14-126(a)(1)(B) (Repl. 2006). Kansas has no such statute.

On this point, Edwards contends in his reply brief that the legislature failed to include language about the position of authority of teachers over students and this court should not read any such language into the law. Two points lead us to a contrary view. First, as a dissenting justice in *Paschal* pointed out, it is "preposterous" to think that a teacher may be unaware of his or her authority; any teacher knows that he or she occupies a position of trust and authority and to say that such authority vanishes when a student turns 18 ignores the realities of the teacher/student relationship. 2012 WL 1034538, at *18-19 (Brown, J., concurring in part and dissenting in part). Secondly, in contrast to the Arkansas crime, our Kansas statute does recognize the aspect of authority. The statute provides that the sexual relations at issue are unlawful if the offender "is a teacher or a person in a position of authority." K.S.A. 21-3520(a)(8). A fair reading of the entire statute reveals that all of the prohibited conduct arises from circumstances where the offender has authority of some sort over another person.

Finally, the *Paschal* court cites no caselaw to support its holding (as it pertains to the teacher/student situation in particular) and fails to acknowledge *McKenzie-Adams, Hirschfelder*, and *Flaskamp*.

We hold there is a rational basis to find K.S.A. 21-3520(a)(8) is constitutional.

*We deal with some arguments raised by Edwards.*

Edwards says K.S.A. 21-3520(a)(8) does not pass the strict scrutiny test for three reasons: First, the statute was passed to appease

one person who had no standing to complain; second, the same conduct—sex with students—is not criminal in the college setting; and third, the statute imposes criminal liability even though Idaho and Iowa courts have determined there is no civil liability for the same conduct. All three arguments leave us unconvinced.

We find the first argument curious. Edwards claims that K.S.A. 21-3520(a)(8) was enacted only to "appease one parent" who was "upset that the person with whom her adult daughter had a consensual relationship would not be prosecuted for getting her pregnant." While it is true that a parent did testify about the bill amending this law, Edwards' assertion that the law was amended just for this reason is unsupported speculation on his part. Clearly, the legislature did not say so. Even if this were true, it would not mean the statute is unconstitutional. Many legislative enactments arise from suggestions by complaining citizens. In addition, our United States Supreme Court has said that "because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).

Next, Edwards argues that because it would have been legal for him to engage in a sexual relationship with A.C.A. had she been a college student and he a professor, this fact somehow makes K.S.A. 21-3520(a)(8) unconstitutional. While it is true that both situations involve learning environments, the circumstances are hardly comparable. High school attendance is mandatory—except for those who fall under a statutory exception—while attendance at college is voluntary. Most of the children attending K-12 schools are minors, while most college students are adults. In our view, the fact that K.S.A. 21-3520(a)(8) is limited to teachers and students in their schools, actually supports the constitutionality of the statute—as it causes the statute to be more narrowly tailored to support the State's interest in prohibiting teacher/student sex with persons who may not be capable of easily refusing consent to sexual conduct.

Finally, the fact that Idaho and Iowa courts have refused to find civil liability based on a teacher's sexual relations with a student

does not make Kansas' criminal statute unconstitutional. Edwards cites no support for the proposition that there can be no criminal liability where there is no corresponding civil liability. And other courts have held a student *does* have an action against a teacher for an alleged violation of the Fourteenth Amendment—as a basis for a 42 U.S.C. § 1983 claim—when there was a consensual sexual relationship between the student and teacher. See *Kinman v. Omaha Public School Dist.*, 171 F.3d 607, 609-11 (8th Cir. 1999); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996); *Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 451 (5th Cir. 1994).

In conclusion, we are persuaded that the State has a legitimate interest in keeping the environment of those children required by law to attend school safe and free from sexual coercion from those in positions of authority or trust. This law recognizes the disparity of power inherent in the teacher/student relationship. Students attend school to learn and should not be subject to sexual pressures from their teachers. There is a rational basis for this law. It is constitutional. We affirm the conviction.