Cite as 2020 Ark. App. 566

# ARKANSAS COURT OF APPEALS

DIVISION II
No.  CR-20-359

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered**  December 9, 2020 |
| JEFFERY BUSHNELL | | |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-19-50] |
| V. | | |
| | | HONORABLE TROY B. BRASWELL, JR., JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Jeffrey Bushnell pleaded guilty during a circuit court hearing to Class B felony theft of property after having embezzled money from his employer between 2013 and 2017.  The guilty-plea hearing did not include sentencing.  A few weeks later at the sentencing hearing, evidence was introduced, and various arguments were presented by Bushnell.  At the conclusion of the hearing, Bushnell was sentenced to fifteen years in prison and ordered to pay restitution in the amount of $115,516.39.  Bushnell does not appeal the guilty plea; rather, Bushnell appeals the sentence, specifically, the amount of the restitution ordered therein.  We affirm.

A person commits theft of property if he knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property.  Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013).  Pursuant to subdivision (b)(2), theft of property is a Class B felony

if the value of the property is $25,000 or more.[1]  On appeal, Bushnell argues that some of the restitution ordered by the trial court was barred by the statute of limitations.

## I.  *The Facts*

The victims in this case are husband and wife, Jamie and Thomas Henry.  The Henrys testified at the sentencing hearing.  The Henrys own two companies called MSE Distributing and Cadron Crest Orchard.  Thomas is the president of the companies and until 2013, Jamie was the bookkeeper.  On April 3, 2013, appellant Bushnell was hired to replace Jamie as the bookkeeper for both companies.

Jamie testified that she trained Bushnell when he was hired as the bookkeeper.  She stated that the bookkeeping job requires the bookkeeper to handle the companies' checking accounts and the purchasing of products and services, which were documented using a "QuickBooks" system.  In his capacity as bookkeeper, Bushnell had full authorization to write checks on behalf of the companies.  Jamie testified that Bushnell worked in that capacity until November 17, 2017, when he was let go because they could no longer afford to pay his salary.

During Bushnell's employment, Jamie did not discover that Bushnell was embezzling money.  She discovered this in August 2018 when she was looking through the previous years' financial records at the request of a business associate who was asking about a canceled check in an unrelated matter.  During this process, Jamie noticed a $4000 check that had

---

[1]Although the State alleged that Bushnell committed several acts of theft over a period of time, consolidation of all the occurrences into one count of theft was proper under Ark. Code Ann. § 5-36-102(a).  Pursuant to subdivision (e)(2) of this statute, the amount of the theft is aggregated in determining the grade of the offense.

been written to Blue Cross Blue Shield, which she thought was an unusual amount. Jamie contacted the bank and discovered that Bushnell had written this check to himself and cashed it, while entering Blue Cross Blue Shield as the payee in the QuickBooks system. Jamie then decided to conduct a comprehensive review of the QuickBooks records compiled during Bushnell's employment, and she discovered that Bushnell had repeatedly engaged in this fraudulent practice between December 31, 2013, and September 26, 2017. Jamie stated that Bushnell would "write a check to himself and hide it in QuickBooks by giving the payee another name." Jamie stated that the QuickBooks records reflected companies that they actually did business with and that these looked like legitimate costs. From Jamie's review of the records, she determined that Bushnell had stolen a total of $115,516.39. Jamie testified that, after she completed her discovery of the theft in August 2018, she reported it to the police the next day.

Jamie testified that during Bushnell's employment she did not have the ability to access the QuickBooks records. Jamie stated that she did not have the QuickBooks password because Bushnell had told her husband that she "was spending lots of money and could not be accountable to handle the checking accounts." Jamie testified that when Bushnell was terminated, she had asked him about certain financial records that should have been left in the office, which would have included copies of canceled checks. According to Jamie, Bushnell told her that the records were lost in an office flood. After Jamie discovered the theft, she contacted the companies' CPA, who informed Jamie that during Bushnell's employment, he had never provided her with copies of the canceled checks but instead had sent her bank statements reflecting only amounts and check numbers.

Thomas Henry testified that he believed the checks written by Bushnell were going to legitimate vendors. Thomas corroborated his wife's account about her lack of access to the QuickBooks records during Bushnell's employment. Thomas stated that, when Bushnell took over for Jamie as bookkeeper, Bushnell told him that "his wife was spending a lot of money" and that Bushnell "was concerned that she would drain the accounts dry." At that point, Thomas decided to "put it into Bushnell's hands." Thomas acknowledged that, during Bushnell's employment, he never reviewed the companies' checking accounts. Thomas testified that "that was what he was for as an office manager," and "I trusted him very much."

Bushnell also testified at the sentencing hearing. Bushnell admitted that, over the course of his employment for the Henrys, he would write checks to himself and enter a different payee in the QuickBooks system. Bushnell stated that, using this scheme, he stole money from the Henrys' companies. Bushnell stated, "I am asking to make this a public apology," and "I betrayed the trust they gave me."

II. *Discussion of Statute of Limitations at the Circuit Court Sentencing Hearing*

During the preliminary discussions at the sentencing hearing, Bushnell contended that because his embezzlement occurred between 2013 and 2017, some of the embezzlement occurred outside the three-year limitations period for theft. The statute of limitations for a Class B felony theft is three years. *See* Ark. Code Ann. § 5-1-109(b)(2) (Supp. 2019). For purposes of the statute of limitations, a prosecution commences when the arrest warrant is issued based on an information, Ark. Code Ann. § 5-1-109(f). In this case, the arrest warrant was issued on January 11, 2019. Therefore, Bushnell contended that

some of the embezzlement occurred outside the three-year limitations period. Bushnell asserted that the restitution can only relate back to January 11, 2016 (the three-year statute-of-limitations period), and that the amount he embezzled before then should not be levied against him.

In a criminal prosecution, the State must prove beyond a reasonable doubt that the statute of limitations has not expired. *See* Ark. Code Ann. § 5-1-111(a)(4) (Repl. 2013). At the sentencing hearing, the State alleged that the total amount Bushnell embezzled from his employer between 2013 and 2017 was $115,516.39 and asked that this all be included in the restitution amount.[2] Bushnell argued that the three-year statute of limitations barred any restitution related to his theft that predated January 11, 2016, and the amount stolen before that date totaled $35,241.64. The State did not contest Bushnell's claim that $35,241.64 had been stolen before January 11, 2016. The State, however, argued that this amount should be included in the restitution because Bushnell committed fraud, and the employer did not discover the illegal transactions until long after Bushnell was terminated, which tolled the statute of limitations. The trial court reserved the statute-of-limitations issue until the end of the sentencing hearing, and the hearing proceeded.

At the conclusion of the testimony set forth above, the parties repeated their arguments concerning the statute of limitations. In arguing that the limitations period never expired with respect to any of the restitution, the State relied on Ark. Code Ann. § 5-1-109(c)(1), which provides:

---

[2]Voluminous bank records were introduced to substantiate the restitution claimed by the State.

5

(c) If the period prescribed in subsection (b) of this section has expired, a prosecution may nevertheless be commenced for:

(1) Any offense involving either fraud or breach of a fiduciary obligation, within one (1) year after the offense is discovered or should reasonably have been discovered by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself or herself not a party to the offense[.]

The State contended that the prosecution, which commenced on January 11, 2019, was commenced within one year of when the Henrys discovered the offense in August 2018. Bushnell, conversely, argued that the illegal transactions prior to January 11, 2016, *should reasonably have been discovered earlier.* Bushnell thus argued that those transactions were barred by the three-year limitations period and should be excluded from the restitution calculation. Blaming the Henrys, Bushnell stated, "If the statements had been examined, they would have seen the canceled checks."

The trial court rejected Bushnell's argument and ruled as follows from the bench:

The State's Exhibit A, B and C and the accounts overview is clear that this defendant took active steps to conceal what he was doing. Mr. Henry was very clear in his testimony that he said I trusted the people that work for me. That he was busy running his companies and the reason that he needed to hire somebody to be in a position to handle the books and take care of the finances, that's the whole reason that he trusted Mr. Bushnell. And the numerous times that Mr. Bushnell violated that trust by making payments that didn't belong to him. Stealing, that's what that is. That he did take active steps to conceal that. So much so that he eventually had Mrs. Henry kicked off of her responsibilities, removed from her responsibilities from having full access and full capability of reviewing all the documents. And it's no surprise that gave Mr. Bushnell even more control and more access to the records. He was the responsible party. He was trusted. He falsified information. He hid it. He prevented discovery. So, based on those findings those have been proven to me beyond a reasonable doubt. I'm going to follow what the law says. And the law says the time is tolled, so long as the action is commenced within one year of the discovery. The testimony was beyond a reasonable doubt, that it was discovered in August of 2018. The record is clear that the case was filed on January the 11, 2019, within the one year. That means that the court is going to order the restitution in the amount of $115,516.39.

6

The trial court subsequently entered a sentencing order that included restitution of $115,516.39.

### III. *The Appeal*

In this appeal, Bushnell challenges only the amount of restitution ordered by the trial court. Bushnell contends that the money he embezzled prior to January 11, 2016, which totaled $35,241.64, should not have been included in the restitution because it was barred by the statute of limitations. When a statute-of-limitations issue is reviewed on appeal, the appellate court views the evidence in the light most favorable to the State. *Talbert v. State*, 367 Ark. 262, 239 S.W.3d 504 (2006).

Before addressing the merits of Bushnell's argument, we must first address the State's contention that this appeal should be dismissed for lack of jurisdiction because Bushnell pleaded guilty. As a general rule, a defendant has no right to appeal from a plea of guilty. *See* Ark. R. App. P.–Crim. 1(a); *Johnston v. State*, 2019 Ark. App. 327. Although there are certain exceptions to this rule, the State posits that none apply here, which it claims requires dismissal of the appeal. We, however, disagree.

To analyze this issue, one must recall the sequence of events in the circuit court. At the first hearing, Bushnell entered a guilty plea to the offense of Class B felony theft of property. That plea hearing concluded without the trial court's entering a sentence against Bushnell. Then, a few weeks later, the trial court convened a sentencing hearing. At the sentencing hearing, evidence was introduced and arguments presented, and Bushnell was sentenced to fifteen years in prison and ordered to pay restitution in the amount of $115,516.39. In this appeal, Bushnell is not appealing the guilty plea; instead, Bushnell is

7

appealing only the amount of restitution ordered in the sentence. Hence, the threshold issue herein is whether a defendant who enters a guilty plea for theft and then subsequently is sentenced in a separate sentencing hearing may appeal his sentence. We find *Bailey v. State*, 348 Ark. 524, 74 S.W.3d 622 (2002), and *Spires v. State*, 2013 Ark. 6, instructive.

In *Bailey*, the appellant entered a guilty plea to a probation violation. The trial court did not impose a sentence during that hearing. The trial court held a subsequent hearing to address the issue of restitution. In the subsequent sentencing hearing, the trial court sentenced Bailey to pay $6,785.60 in restitution. The appellant appealed, arguing that the restitution amount was entered without authority. As in the case at bar, the supreme court first reviewed whether it had jurisdiction to hear the appeal since the appeal arose out of a case involving a guilty plea. The supreme court in *Bailey* concluded that it had jurisdiction over the appeal, and wrote:

> As an initial matter, we address appellant's right to appeal the trial court's order of punishment, given that he pled guilty to the allegation contained in the State's petition. Generally, there is no right to appeal from a plea of guilty. *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994). Pursuant to Ark. R. Crim. P. 24.3, an appeal from a guilty plea or a plea of nolo contendere may be allowed under certain circumstances, none of which are applicable here. . . . *Where, however, an appeal from a plea of guilty raises only an issue of sentencing, rather than requiring a review of the plea itself, this court will entertain such an appeal.* *Hill*, 318 Ark. 408, 887 S.W.2d 275. Accordingly, the issue raised by appellant is properly before the court.

348 Ark. at 527–28, 74 S.W.3d at 623–24 (emphasis added).

Then, eleven years later, in *Spires*, the supreme court was again confronted with an appeal that arose from a guilty plea. Importantly, in *Spires*, during the circuit court plea hearing Spires pleaded guilty to the offense *and* the circuit court imposed its sentence. Examining jurisdiction within the context of a guilty plea, the *Spires* court discussed and

8

distinguished *Bailey*, *supra*.  In *Spires*, the appellant pleaded guilty to two counts of theft of property, *and* at the same hearing, appellant was ordered to pay $14,400 and $9811 in restitution to the victims.  Spires appealed, challenged the amount of restitution, and argued that the restitution amounted to double restitution and that the State had failed to show one of the victims suffered an economic loss.  The *Spires* court dismissed the appeal for lack of jurisdiction, and wrote:

> The circuit court [in *Bailey*] revoked his probation based on his failure to pay any of the original restitution, and entered an amended order of revocation requiring payment of $6,785.60 in restitution.  Bailey appealed.  Because Bailey's guilty plea required restitution with a specific amount to be decided later, the appeal raised only an issue of sentencing and did not require review of the plea itself.
>
> . . . .
>
> Because the restitution order appealed from in *Bailey* was entered in a hearing after the entry of the guilty plea, it did not require review of the plea itself and this court had jurisdiction to hear the appeal.
>
> The facts in Spires's case are different from those in *Bailey*.  The restitution Spires was ordered to pay was not decided separate and apart from the guilty plea; it was decided on the same day prior to the entry of the plea.  *Cf. Bradford* [*v. State*, 351 Ark. 394, 94 S.W.3d 904 (2003)] (holding that this court will hear an appeal of a restitution order when the sentencing hearing took place separate and apart from the guilty plea).  In fact, Spires signed a guilty-plea agreement setting out the amount of restitution to be paid before she entered her plea.  *Because the issue of restitution was not decided separate and apart from the entry of the plea of guilty, the exception set out in Bailey and Hill does not apply*.

2013 Ark. 6, at 3–4 (emphasis added).

In the case at bar, we conclude that the exception set forth in *Bailey*, i.e., where an appeal from a guilty plea raises only an issue of sentencing rather than requiring a review of the plea itself, is applicable.  As in *Bailey*, Bushnell pleaded guilty, and a sentencing hearing was held separate and apart from the guilty plea.  And, unlike the appellant in *Spires*, when

9

Bushnell pleaded guilty there was no agreement setting out the amount of restitution to be paid before he entered the plea. Because this appeal raises only an issue of sentencing rather than requiring a review of the plea itself, we conclude that Bushnell's appeal is properly before this court. *See also Simmons v. State*, 90 Ark. App. 273, 205 S.W.3d 194 (2005) (permitting an appeal from a guilty plea challenging the amount of restitution).

Having concluded that we have jurisdiction of this appeal, we now turn to the merits of Bushnell's argument. Because the prosecution against Bushnell was not commenced until January 11, 2019, Bushnell argues that any restitution for illegal transactions occurring before January 11, 2016, was barred by the applicable three-year statute of limitations. The trial court ordered the full extent of the restitution based on Ark. Code Ann. § 5-1-109(c)(1), which provides:

> (c) If the period prescribed in subsection (b) of this section has expired, a prosecution may nevertheless be commenced for:
>
> (1) Any offense involving either fraud or breach of a fiduciary obligation, within one (1) year after the offense is discovered or should reasonably have been discovered by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself or herself not a party to the offense[.]

Bushnell argues that the trial court erred in this regard because the offense *should have been discovered* more than one year before the prosecution commenced. Bushnell states that his employment was terminated on November 17, 2017; that the offense was not discovered until August 2018; and that the prosecution commenced on January 11, 2019. Bushnell argues that the theft should have been discovered by the Henrys immediately after he was terminated, which was more than a year before the prosecution commenced, thus rendering Ark. Code Ann. § 5-1-109(c)(1) inapplicable.

10

The only case cited by Bushnell is *Leek v. State*, 2012 Ark. App. 699, where this court determined that the three-year statute of limitations had been tolled and we affirmed jurisdiction. Bushnell attempts to distinguish *Leek* and then use *Leek* to support his argument. In *Leek*, the appellant was arrested on November 8, 2010, for embezzling money from Powerhouse Gym between November 1, 2007, and February 2010. At trial, the evidence showed that appellant was the bookkeeper who handled payroll during that time. According to the company's owner, the paperwork appellant provided to him during her employment did not show she was receiving money in addition to her salary. However, shortly after appellant quit, the owner reviewed business records that showed appellant had been receiving her usual salary each pay period plus what was termed a "manager add-on," which was unauthorized additional pay. After appellant was convicted and ordered to pay the entire amount of restitution, she appealed and argued that any restitution related to instances of theft prior to November 8, 2007, was barred by the three-year statute of limitations. We disagreed, and explained:

> We find appellant's statute-of-limitations argument to be without merit. Arkansas Code Annotated section 5-1-109(b)(2) (Repl. 2006) does subject Class B felonies to a three-year statute of limitations. However, section 5-1-109(c)(1) states that, although a statute of limitations outlined in subsection (b) may have expired, a prosecution may be commenced for any offense involving fraud or breach of a fiduciary obligation within one year after the offense is discovered or should have been discovered. Appellant was convicted of using her position handling the payroll for her employer to steal tens of thousands of dollars over a three-year period. Her actions clearly constituted fraud. Jeff Lawrence testified that appellant was in charge of Powerhouse Gym's payroll from 2007 until the time she left in early 2010. He also testified that the first time he handled the payroll was after she had left. Therefore, the fraud was not discovered until early 2010. Appellant was arrested in late 2010, within a year of the discovery of her theft. Therefore, the statute of limitations had not run as to any of the applicable thefts at the time the criminal proceedings were initiated. The judgment of the trial court is affirmed.

11

*Leek*, 2012 Ark. App. 699, at 4.

Bushnell argues that *Leek* is distinguishable and therefore supports his argument because, in that case, the theft was discovered immediately after the bookkeeper's termination. We find Bushnell's argument unconvincing. Bushnell claims that in this case, his theft should have been discovered immediately after his termination and that a simple review of the companies' bank records posttermination would have uncovered his malfeasance. For this reason, Bushnell argues that the prosecution was not commenced within the one-year period prescribed by Ark. Code Ann. § 5-1-109(c) and that no restitution should have been ordered for the transactions occurring more than three years prior to the commencement of the prosecution.

Viewing the evidence in the light most favorable to the State, we conclude that the trial court did not err in applying Ark. Code Ann. § 5-1-109(c) and in finding that none of the restitution was time-barred. The testimony showed that, when Bushnell was hired as bookkeeper, he convinced Thomas that Jamie should no longer have access to the QuickBooks records because she could not be "accountable" to handle the checking accounts and "would drain the accounts dry." Over the next several years, Bushnell wrote checks to himself and concealed it by denoting what appeared to be legitimate payees in the QuickBooks records. Thomas testified that he never reviewed the checking accounts because that was Bushnell's job and that he "trusted him very much." In his own testimony, Bushnell admitted that he betrayed the trust given to him. Jamie discovered the fraudulent transfers by accident in August 2018 when she was reviewing the QuickBooks records for another purpose. When Jamie discovered the theft, she contacted the companies' CPA,

12

who informed Jamie that during Bushnell's employment, he had never provided her with copies of the canceled checks but had instead sent her bank statements reflecting only amounts and check numbers. Notably, Jamie testified that when Bushnell was terminated, she had asked him about financial records that should have been left in the office, and Bushnell said they had been lost when the office flooded. It is evident that the theft was not discovered until several months after Bushnell's termination because Bushnell had successfully concealed his fraudulent activity. Therefore, we hold that the trial court correctly concluded that the one-year period in Ark. Code Ann. § 5-1-109(c)(1) did not begin until the offense was actually discovered in August 2018. Because the prosecution was commenced on January 11, 2019, which was within one year of the discovery, the statute of limitations did not run with respect to any of the restitution.

Affirmed.

GRUBER, C.J., and ABRAMSON, J., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.